THE DEPARTMENT OF CONSERVATION, Plaintiff-Appellee and Cross-Appellant *v*. LAWRENCE LAWLESS, Defendant-Appellant and Cross-Appellee.—LAWRENCE LAWLESS, Plaintiff-Appellee, *v*. DAVID KENNEY, Director of Conservation, Illinois Department of Conservation, Defendant-Appellant.

Third District   Nos. 80-573, 80-477 cons.

Opinion filed September 3, 1981.—Rehearing denied October 14, 1981.

Tyrone C. Fahner, Attorney General, of Springfield (Roy Frazier, Assistant Attorney General, and Thomas Feehan, Special Assistant Attorney General, of counsel), for appellant.

Raymond A. Feeley, of Kozlowski, Polito & Feeley, of Joliet, and Lawrence Lawless, *pro se* of Chicago, for appellee.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

This consolidated appeal involves the Department of Conservation's (the Department) attempt to purchase the residence and surrounding four acres of Lawrence Lawless, which is located in Will County. Two lawsuits resulted. In the first, Lawless as plaintiff, sought a writ of *mandamus* ordering the Department's director to purchase the property by condemnation. The writ issued. In the second cause, the plaintiff, the Department, brought an eminent domain action against the defendant, Lawless. Although defendant received a favorable verdict, he complains about the trial court's denial of certain post-trial motions. The facts follow.

In 1972 the Department told Lawless of its intent to purchase his property as part of an overall plan to develop Thorn Creek Woods Nature Preserve in Park Forest, Illinois. The Lawless property abuts this area. Between January 1976 and March 1978, negotiations resulted in several offers which Lawless rejected as inadequate. On January 31, 1978, the Department notified Lawless of its intent to take his property by eminent domain. On June 4, 1978, a public dedication ceremony was held for the Thorn Creek Woods Nature Preserve. The Department acted as sponsor. The general public was invited. Lawless' home was designated, and publicly represented, as the Preserve's "Interpretive Center." The land encircling his home was earmarked as public picnic and parking areas.

On June 27, 1978, Lawless sought a writ of *mandamus* to compel the Department to proceed by condemnation to purchase his property. In response to this complaint the Department did nothing. Although person-

ally served, it did not file an appearance nor an answer. On August 9, 1978, the plaintiff moved for a default judgment, which was granted. The order provided the Department to proceed by eminent domain in the Lawless purchase. Two years later, the Department sought to vacate this order. On October 1, 1980, such motion was denied. The Department now appeals.

The eminent domain proceeding was initiated by the Department filing a petition to condemn the Lawless real estate on July 28, 1978. Lawless was personally served in such action on August 17, 1978, eight days after the execution of the *mandamus* order. After some confusion about the legal ramifications of the latter order and the filing of tome-like briefs and memoranda, trial was set for June 23, 1980. It lasted four days. The jury returned an award of $180,000 as compensation for the Lawless property. Judgment was entered thereon. Lawless then filed motions for statutory interest on the award, and mortgage interest accruing from June 4, 1978, appraisal fees, costs, and attorney's fees for *pro se* and outside counsel. It is from the trial court's decisions on these motions that he now prosecutes his appeal.

## *The mandamus action*

The Department alleges the trial court erred in granting the writ of *mandamus*. It argues the trial court lacked jurisdiction to consider the writ because no controversy existed between the parties. Since the eminent domain action had already been filed, it urges, the *mandamus* order requiring it to perform an act already done is useless and moot. It also complains that Lawless either lied, or concealed a material fact, when, in applying for *mandamus*, he stated the Department had not filed an eminent domain suit, had threatened condemnation, and invited the general public to his home. Finally, it contests the award of attorney's fees and costs, since, it claims, the Department undertook condemnation proceedings voluntarily, not by order of court. We affirm.

If the trial court lacked subject matter jurisdiction the Department correctly observes that its orders are void, can be contested at any time, and have no binding effect. In arguing the trial court was so disposed, the Department ignores the facts, as well as its own inertia, as a party in such litigation.

■■ Lawless requested *mandamus* on June 27, 1978. The Department was personally served three days later. Instead of responding to the complaint, the Department, inexplicably, did nothing until August 8, 1980, when it sought to vacate the trial court's default order of August 9, 1978. The fact the Department filed an eminent domain action on July 28, 1978, does not alter the *mandamus* writ ordering it to file such a suit, although the latter was entered subsequently. The record makes clear that Lawless

was not personally served with process in the eminent domain action until August 17, 1978. If Lawless was unaware of that suit, how could he inform the *mandamus* court of its existence on August 9, 1978? Such is impossible. The law imposed no duty on Lawless to search the records of the Will County Courthouse endlessly to ascertain whether the Department had filed a lawsuit against him.

■■ Similarly, the record does not support the Department's contention that Lawless lied or concealed facts relevant to issuing the writ of *mandamus*. It is undisputed that on June 4, 1978, the Department held a public dedication ceremony for the Thorn Creek Woods Preserve. The entire 900-acre area, including the Lawless property, was dedicated. It matters not one whit, as the Department argues, that such ceremony was held on the edge of the preserve opposite the Lawless real estate. The point is the Lawless property was represented as being public land. Although we agree that literally "thousands" of persons did not descend upon the Lawless dwelling, such hyperbole does not amount to misrepresentation.

■■■ We hold the issuance of the writ of *mandamus* was a valid, legal act, binding the parties to those terms which it specifically encompassed. The Department was duty-bound to adhere to its provisions. And, since the Department was ordered to proceed by condemnation, the subsequent award of attorneys' fees and costs was proper. The statute so provides. (Ill. Rev. Stat. 1979, ch. 47, par. 9.8.) Obviously, if the Department had taken the time to answer the *mandamus* complaint by showing proof of filing the eminent domain action, the time, effort, and expense this litigation spawned might have been reduced, if not eliminated. It cannot now seek to validate its position by its prior inaction. Although we recognize that Illinois courts are liberal in setting aside default judgments (*Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 310-11), such a result is not warranted where, as here, the failure to appear is due to the Department's own negligence, mistake, or calculated indifference. No abuse of discretion occurred in denying the Department's motion to vacate the final *mandamus* judgment, or in awarding attorney's fees.

### The eminent domain suit

As appellant, defendant Lawless raises three issues for our review: (1) whether statutory interest of 6 percent accrues from June 4, 1978 to June 26, 1980, the date of the eminent domain judgment; (2) whether mortgage interest owed on the condemned property during the same period should be awarded; (3) whether *pro se* attorney fees at trial, as well as *pro se* and outside attorney fees, appraisal fees, and costs should be allowed after judgment is entered at the trial level. The latter error will be addressed separately.

We do not agree with Lawless' contention that statutory interest accrues from June 4, 1978, the date of "taking" established in the *mandamus* judgment. Although appealing is a very technical sense, several reasons exist why such a conclusion is wrong.

■■ Generally, a condemnation award earns interest from the time the judgment is entered until the condemnor pays the award to the county treasurer. (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 358.) Common sense dictates that interest should not accumulate until actual possession takes place. Although defendant argues the *mandamus* court found a "taking" of the Lawless property on June 4, 1978, this does not necessarily mean that at such time the Department took possession of the property. In arguing it does, Lawless ignores reality. As the trial judge noted, Lawless continued to live on the condemned premises after June 4, 1978, until June 26, 1980, the day the jury returned its verdict. In short, he had actual occupancy of the property. After the initial dedication ceremony the record is barren of any affirmative actions the Department undertook to cause Lawless to give up possession of those premises.

■■ In this regard, *Department of Public Works v. Exchange National Bank* (1975), 61 Ill. 2d 346, is instructive. In that case, a State agency filed a petition to condemn 4000 of approximately 23,000 square feet of a building used as a restaurant and a dwelling. The condemnee cross-petitioned, claiming the State must purchase the whole fee interest, since if it did not, the remainder of the property would be useless. The State took possession of the land on September 1, 1970. Public access to the building was eventually halted on August 1, 1971. In affirming the trial court, the supreme court found the latter date controlling as to the date of possession (and thus when interest should be computed), since the condemnees had the use and occupancy of the property until that time. Although a "quick-take" condemnation case, this opinion as to the issue of when statutory interest is to be computed is fully applicable to the case at bar. Lawless retained actual, physical possession of the condemned property up until the time of the verdict and judgment. The Department did not obstruct his occupancy or continued use of such property.

■■ ■■■■ the *mandamus* judgment did not bar the eminent domain court from considering when possession by the Department actually occurred. In the *mandamus* action the trial judge never determined, as a matter of fact, when Lawless surrendered actual possession of the condemned property. Since never determined originally, the eminent domain court was required to consider it. This is so because the finding of the particular fact of actual occupancy by the Department was material to the outcome in both lawsuits. Upon such finding hinged the date from which statutory interest would accrue. Moreover, it is unclear from the *mandamus* proceeding whether the date of "taking," namely, June 4, 1978, was

viewed by the *mandamus* judge as the date when Lawless was actually dispossessed, in fact, or merely the date to be used for valuation of the Lawless property for purposes of compensation. Accordingly, since uncertainty exists on this vital issue, the trial judge in the eminent domain proceeding was not precluded from determining this fact which was a material and controlling consideration in rendering a proper judgment on the condemnation award. *Lange v. Coca-Cola Bottling Co.* (1969), 44 Ill. 2d 73.

■■ Lawless also seeks to recover the amount of mortgage interest he owes on the condemned property from June 4, 1978, to June 26, 1980. This amount, he claims, is an element of "just compensation" to which he is entitled under the Illinois and Federal constitutions. This argument is completely meritless. Does Mr. Lawless expect to live on the condemned premises for a two-year period for nothing? Such is the result, if we accept the argument he advances. As long as people pay for housing, either by mortgage or rental payments, Mr. Lawless can expect to do no less.

*Fees and costs*

The final issue is double-barrelled: (1) is Lawless entitled to outside attorney, appraisal, and engineering fees and costs in connection with post-trial and appellate proceedings in these lawsuits? (2) was the denial of *pro se* attorneys' fees to Lawless himself in this entire litigation error? While we respond to the former affirmatively, we are constrained to deny such expenses in the latter instance.

Because our decision must turn on an interpretation of section 9.8 of the Eminent Domain Act, we set it out in full:

> "Where the State of Illinois, a political subdivision of the State or a municipality is required by a court to initiate condemnation proceedings for the actual physical taking of real property, the court rendering judgment for the property owner and awarding just compensation for such taking *shall determine and award or allow to such property owner*, as part of such judgment or award, such further sums, as will in the opinion of the court, reimburse such property owner for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees actually incurred by the property owner in such proceedings."
> (Emphasis added.) Ill. Rev. Stat. 1979, ch. 47, par. 9.8.

The statute is not a paradigm of legislative clarity. It says a trial court "shall ° ° °" make an award of attorneys' fees and other litigation expenses, while permitting a trial judge to allow or refuse such an award based on his sound discretion. Nonetheless, the trial judge's denial of

Lawless' outside attorney, appraisal and engineering fees, as well as costs in all post-trial proceedings, was error.

It is well settled in Illinois that appeal costs, including attorneys' fees, are not recoverable in the absence of statutory authorization. (*House of Vision v. Hiyane* (1969), 42 Ill. 2d 45, 51-52.) Although the aforementioned statute expressly permits an award of attorneys' fees and other litigation expenses, at the trial level, the State argues, if the statute is strictly construed, it says nothing about such post-trial expenses, and therefore does not authorize them. Contrary to the State's assertion, *Department of Public Works v. Lanter* (1958), 15 Ill. 2d 33, does not warrant denial of such expenses.

*Lanter* involved a condemnee's appeal after the State dismissed a petition to condemn Lanter's property. (See Ill. Rev. Stat. 1979, ch. 47, par. 10.) Attorneys' fees for appellate legal work were denied. Lanter's appeal was not considered an integral component of the original eminent domain action. This is because, in appealing, Lanter effectively took the "offensive" in the litigation and thereby assumed a posture contrary to his position on the original condemnation petition. Accordingly, without a specific legislative authorization, the supreme court would not allow attorneys' fees concerning the appeal.

■■ ■ A defendant in an eminent domain action has both statutory (Ill. Rev. Stat. 1979, ch. 47, par. 12) and constitutional (Ill. Const. 1970, art. VI, §6) rights to appeal an eminent domain judgment. The General Assembly is charged with knowledge of the existence of such rights when it enacted section 9.8 of the Eminent Domain Act. This statute specifically authorizes awarding reasonable litigation expenses in inverse condemnation suits. Unlike Lanter, Lawless has taken an adverse position to the Department from the outset. Therefore, if the constitutional right of appeal means anything, the posture of a condemnee in an inverse condemnation action is irrelevant as long as the appeal he prosecutes is not completely frivolous. In the instant appeal Lawless is not the only appellant. The Department seeks to overturn the *mandamus* judgment. Since the actions have been consolidated, even *Lanter* would authorize Lawless' post-trial costs and attorneys' fees in the appeal of the latter judgment. This is so because the *mandamus* judgment was the legal catalyst for the eminent domain litigation. Moreover, the Department's failure to respond to the *mandamus* complaint was the cause of its own appeal. If it had answered in a timely fashion, no doubt an appeal of the *mandamus* judgment would not have been filed. Accordingly, the trial court erred when it did not allow reasonable outside attorneys' fees and the other enumerated expenses section 9.8 permits concerning post-judgment proceedings in this litigation.

Also, the trial court erred in denying *pro se* attorneys' fees with respect to the instant litigation. The statute says the trial judge shall determine the composition of those enumerated litigation expenses, and allow or refuse such expenses in the exercise of its sound discretion. This means reasonable expenses should be allowed, whereas unreasonable ones should not. In determining whether a *pro se* award is reasonable, the fact an attorney appears *in propria persona*, in addition to hiring outside counsel, is not the sole determinant in justifying an award of attorneys' fees. The trial judge apparently thought it was.

Various factors such as the time and labor required, the customary fee for such legal work, the amounts of such awards in similar cases, the novelty of the question presented, the actual necessity of hiring additional counsel, and the attorney's reputation and experience, form that matrix of factors which comprise the reasonableness of an attorney's fee. The record does not reflect these components formed the basis for the trial court's denial of a *pro se* award. The fact that Mr. Lawless performed legal work in his own behalf does not, in and of itself, denote that compensation for such work is either unreasonable or reasonable. The justification for an award must turn on analysis and balancing of all factors enumerated above.

Therefore, on remand the trial court shall determine all litigation expenses, including *pro se* attorneys' fees, as enumerated in section 9.8 of the Eminent Domain Act. Such calculation is to include trial, post-judgment, and appellate proceedings. Once the amounts are computed, the trial judge must then determine whether such are reasonable or unreasonable and enter an award for such expenses accordingly.

For the reasons stated, the *mandamus* judgment of the Circuit Court of Will County is affirmed. The eminent domain judgment is accordingly vacated as to the amount of the judgment. This cause is remanded to the Will County Circuit Court for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; cause remanded.

BARRY and STOUDER, JJ., concur.