# Illinois Official Reports

## Supreme Court

---

### *McCarthy v. Taylor*, 2019 IL 123622

---

| | |
|---|---|
| Caption in Supreme Court: | GERALD S. McCARTHY, Appellee, v. ROZLYN TAYLOR *et al.* (Marvin Gray, Appellant). |
| Docket No. | 123622 |
| Filed | June 20, 2019 |
| Modified upon denial of rehearing | October 1, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded with directions. |
| Counsel on Appeal | Marvin Gray, of Chicago, appellant *pro se*. <br><br> Tanya D. Woods, of Chicago, for appellee. |

Justices          JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Thomas, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Karmeier concurred in part and dissented in part, with opinion.

Justice Garman concurred in part and dissented in part, with opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1    In this appeal, we address, as a matter of first impression, whether a court may impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous cause of action. Here, plaintiff and defendant are both experienced licensed attorneys who proceeded *pro se* in the action below.

¶ 2    Plaintiff, Gerald S. McCarthy, filed a complaint against defendant, Marvin Gray. Plaintiff's complaint was dismissed, and the Cook County circuit court entered an order imposing Rule 137 sanctions against him, in favor of defendant. Plaintiff appealed, arguing that the circuit court erred in dismissing his tortious interference claim and issuing Rule 137 sanctions. The appellate court affirmed the dismissal of plaintiff's tortious interference claim and the finding that plaintiff violated Rule 137 in filing that frivolous claim, but it reversed the circuit court's finding that defendant was entitled to attorney fees and vacated that award. *McCarthy v. Abraham Lincoln Reynolds, III, 2006 Declaration of Living Trust*, 2018 IL App (1st) 162478.[1] We reverse that part of the appellate court judgment vacating defendant's attorney fee award and remand for further proceedings consistent with this opinion. The remainder of the appellate court's judgment is affirmed.

¶ 3                                    BACKGROUND

¶ 4    In 2006, Abraham Lincoln Reynolds III created and executed the "A. L. Reynolds III 2006 Declaration of Living Trust," naming himself as the trustee. Cherie Coles, the romantic interest of Reynolds, was named as successor trustee. Plaintiff was appointed as the second successor trustee. The trust granted 10% of the residuary estate to plaintiff, 80% to Coles, and 10% to Elaine Lawell. If Coles predeceased Reynolds, however, her 80% share would go to plaintiff, and plaintiff's 10% share "shall [be] extinguished and be given to Reverend Wayne Reynolds, Senior." The schedule of property attached to the trust document included bank accounts,

---

[1]Plaintiff's complaint duplicatively named the trust as an entity and trustee Rozlyn Taylor in her trustee and individual capacities. As trustee, Taylor held legal title to the property and bore the capacity to compromise or contest claims against the trust estate. 760 ILCS 5/4.11 (West 2012); see *Campbell v. Campbell*, 2017 IL App (3d) 160619, ¶ 17 ("In a conventional trust, the trustee holds the legal title to the property and the beneficiary holds the equitable title." (quoting Restatement (Third) of Trusts ¶ 2 cmt. d (2003))).

savings bonds, a "1996 Mercury Grand Marquee [*sic*]" automobile, personal and household items, and a condominium apartment located in Chicago. Defendant was Reynolds's attorney who prepared the trust document.

¶ 5    Coles passed away in 2007. In 2010, Reynolds executed an amendment to the trust clarifying and augmenting the power of the trust to include the powers to borrow money on behalf of the trust and to pledge and encumber property of the trust. The amendment further provided that "the real property owned by [the trust] is encumbered or conveyed by [Reynolds] to secure payment" for a "Home Equity Conversion Mortgage" through Wells Fargo Bank.

¶ 6    Reynolds committed suicide on December 15, 2012. Defendant contacted plaintiff after Reynolds's death and notified him that Reynolds had amended the trust before his death. Defendant informed plaintiff that Reynolds came to defendant's home prior to his suicide and presented defendant with an amended trust document he "had made in his own handwriting." The amendments named Rozlyn Taylor as successor trustee. Reynolds and Taylor had become intimately involved after Coles's death. The amendments granted 20% of the residuary estate to plaintiff, 70% to Taylor, and 10% to Devon Morris. The schedule of property was amended to delete certain bank accounts and savings bonds as "gone" and added new bank and individual retirement accounts. The schedule of property also substituted a 1998 Oldsmobile for the 1996 Mercury.[2]

¶ 7    Plaintiff filed a *pro se* complaint in 2013, in another action that is not the subject of this appeal, alleging that Reynolds's amendment to the trust was invalid. Defendant testified as a witness at the trial. The circuit court ruled against plaintiff, finding that Reynolds's handwritten amendment to the trust naming Taylor as the successor trustee was valid. The appellate court affirmed. *McCarthy v. Taylor*, 2014 IL App (1st) 132239. On September 26, 2014, plaintiff filed a petition for leave to appeal with this court. We denied leave to appeal. *McCarthy v. Taylor*, No. 118293 (Ill. Nov. 26, 2014).

¶ 8    On June 9, 2014, plaintiff filed a *pro se* five-count complaint, the subject of this appeal, against Taylor, in her capacity as trustee and individually, and defendant. In relevant part, plaintiff presented two counts against defendant: (1) alleging defendant breached his fiduciary duty to plaintiff as a beneficiary of the trust and (2) alleging defendant tortiously interfered with plaintiff's share of the trust by making false statements and presenting misleading evidence against him in the 2013 case. In response, defendant filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)).

¶ 9    On February 27, 2015, the circuit court dismissed plaintiff's tortious interference claim with prejudice pursuant to section 2-619(a)(4) of the Code (735 ILCS 5/2-619(a)(4) (West 2012)) based on the doctrine of *res judicata*, because plaintiff's action essentially asked the circuit court to relitigate the issues determined in the 2013 case, namely, the veracity of the handwritten trust amendment. The court also dismissed plaintiff's breach of fiduciary duty claim but on the basis of his failure to present a sufficient claim pursuant to section 2-615 of

---

[2]An inventory filed by the trustee in this action indicates the total value of estate assets together with items in the trust that included the value of the condominium ($88,000, subject to a $44,000 mortgage) to be approximately $105,400, less the mortgage on the condominium, for a value of the remaining assets totaling approximately $61,400.

the Code (735 ILCS 5/2-615 (West 2012)). Plaintiff was granted leave to amend his complaint on the breach of fiduciary duty claim.

¶ 10   On March 27, 2015, plaintiff filed an amended complaint containing one count against defendant for breach of fiduciary duty. Plaintiff alleged defendant had a duty to act with due care in providing plaintiff with services related to the trust. On August 25, 2015, the circuit court again dismissed plaintiff's claim against defendant, stating:

> "McCarthy has not alleged any facts which would establish that Gray owed him a fiduciary duty. McCarthy has cited no legal authority for the proposition that a trust attorney owes a fiduciary duty to the trust's beneficiaries as a matter of law. Since McCarthy and Gray were not otherwise in privity, McCarthy would need to allege facts which would show his eligibility for an exception to the rule. However, McCarthy has failed to allege facts to support that any contract was entered into for his benefit, or the benefit of all the beneficiaries. Since McCarthy has failed to make any more than a bare-bones assertion that a fiduciary duty exists, he has not alleged the essential elements of his cause of action."

¶ 11   Defendant then filed a motion seeking sanctions under Illinois Supreme Court Rule 137 (eff. July 1, 2013), including an award for attorney fees and an award for costs, against plaintiff. In support of his request for sanctions, defendant alleged that plaintiff made false statements in his complaint and that he and plaintiff did not have an attorney-client relationship. Defendant requested sanctions in the amount of $11,232.55 as a result of having to defend against "plaintiff's unfounded, fallacious and specious allegations and pleadings." Defendant later amended the sanction expense to $12,106.03 for the time expended in defending against the case as of November 13, 2015.

¶ 12   The circuit court entered an order granting in part and denying in part defendant's motion for Rule 137 sanctions. The court found that plaintiff's cause of action against defendant for tortious interference was frivolous and, therefore, subject to Rule 137 sanctions. The court concluded, however, that sanctions were not appropriate for the breach of fiduciary duty claim. The circuit court later entered a corrected order clarifying that it found Rule 137 sanctions were warranted only for the tortious interference claim. The court entered a sanction award in defendant's favor for $9907.98, including $102.28 in costs for parking and postage fees.

¶ 13   Plaintiff appealed, contending that the circuit court erred in dismissing his tortious interference claim based on *res judicata* and issuing Rule 137 sanctions. Plaintiff also contended that the circuit court erred in awarding fees as a sanction against him in favor of defendant.

¶ 14   The appellate court affirmed the dismissal of plaintiff's tortious interference claim and its finding that plaintiff violated Rule 137 in filing that frivolous claim. However, the appellate court reversed the circuit court's finding that defendant was entitled to attorney fees and vacated that award on the basis that a *pro se* attorney is not entitled to receive attorney fees. 2018 IL App (1st) 162478. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Apr. 1, 2018).

¶ 15                                    ANALYSIS

¶ 16   Defendant, proceeding *pro se*, has elected to allow his petition for leave to appeal to stand as his brief in this case. Ill. S. Ct. R. 315(h) (eff. Apr. 1, 2018). Although plaintiff proceeded

*pro se* in the circuit court, he subsequently retained counsel to represent him in the appeal process.

¶ 17    The issue in this appeal is whether a court may impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous cause of action. Interpretation of the Illinois Supreme Court rules is governed by the same principles as statutory interpretation. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 12; *People v. Santiago*, 236 Ill. 2d 417, 428 (2010). Our goal is to ascertain and give effect to the drafters' intention. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). This court begins our interpretation with the language of the rule, given its plain and ordinary meaning. *People v. O'Brien*, 197 Ill. 2d 88, 90 (2001). When the language of the rule is clear and unambiguous, we will apply the rule as written without resort to further aids of statutory construction. *O'Brien*, 197 Ill. 2d at 90-91. "The interpretation of a supreme court rule, like the interpretation of a statute, is a question of law that we review *de novo*." *Santiago*, 236 Ill. 2d at 428. "[B]ecause Rule 137 is penal in nature, it is narrowly construed." *Lake Environmental*, 2015 IL 118110, ¶ 12.

¶ 18    Rule 137(a) provides, in relevant part:

"Every pleading, motion or other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or in a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** *If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee.*" (Emphasis added.) Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 19    The plain language of Rule 137 authorizes a court to impose sanctions against a party or counsel for filing a motion or pleading that is not well grounded in fact; that is not supported by existing law or lacks a good-faith basis for the modification, reversal, or extension of the law; or that is interposed for any improper purpose. It is settled that "[t]he purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001); see also *In re Estate of Wernick*, 127 Ill. 2d 61, 77 (1989) (noting that the purpose of section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, ¶ 2-611), the predecessor to Rule 137, was to "penalize the litigant who pleads frivolous or false matters, or who brings a suit without any basis in the law"). In other words, the clear purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits. *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 279 (1997).

¶ 20    Nothing in the plain language of Rule 137(a) precludes imposition of a sanction for filing of a frivolous lawsuit in the form of an award of fees in favor of a *pro se* defendant who is also

an attorney. The committee comments to Rule 137 also contain no express intended prohibition on imposing a sanction against a plaintiff in the form of attorney fees for filing a frivolous lawsuit in favor of a party who is a *pro se* attorney. See Ill. S. Ct. R. 137, Committee Comments (adopted June 14, 2013). The parties have not cited any Illinois case, nor has our research revealed any Illinois case, where a court has considered whether a monetary sanction for violation of Rule 137(a) may include attorney fees for time spent by a *pro se* litigant who is an attorney defending against a plaintiff's frivolous pleadings. Thus, the issue here is one of first impression.

¶ 21 In this case, the appellate court relied on this court's decision in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989), to conclude that the circuit court did not have authority to grant attorney fees as a remedy under Rule 137. In *Hamer*, this court held that an attorney appearing *pro se* as the plaintiff in an action brought pursuant to the Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, ¶ 201 *et seq.*) was not entitled to attorney fees. *Hamer*, 132 Ill. 2d at 63. Notably, *Hamer* involved the fee-shifting provisions of the FOIA rather than sanctions under Rule 137.

¶ 22 In *Hamer*, we recognized that the purpose of the fee-shifting provision of the Illinois FOIA is to ensure its enforcement, and that "is accomplished by removing the burden of legal fees, which might deter litigants from pursuing legitimate FOIA actions." *Hamer*, 132 Ill. 2d at 61-62. We explained that the fee-shifting provision was not "intended as either a reward for successful plaintiffs or as a punishment against the government" and that "legal fees do not present a barrier to a *pro se* lawyer seeking to obtain information." *Hamer*, 132 Ill. 2d at 62. We also recognized that one of the goals of the Illinois FOIA fee-shifting provision "is to avoid unnecessary litigation by encouraging citizens to seek legal advice before filing suit." *Hamer*, 132 Ill. 2d at 62. Additionally, we also opined that "[t]he most effective way to deter abusive fee generation" by unscrupulous lawyers "is to deny fees to lawyers representing themselves." *Hamer*, 132 Ill. 2d at 62-63.

¶ 23 The appellate court acknowledged that there was no Illinois case law applying *Hamer* to a Rule 137 motion and that "the purpose of Rule 137 is, in relevant part, to curb the filing of frivolous pleadings." 2018 IL App (1st) 162478, ¶ 29. The appellate court further acknowledged that plaintiff's tortious interference claim "was undoubtedly a frivolous cause of action." 2018 IL App (1st) 162478, ¶ 29. Nevertheless, the appellate court determined that *pro se* attorneys are not entitled to attorney fees under Rule 137. 2018 IL App (1st) 162478, ¶ 29.

¶ 24 The appellate court reasoned that Rule 137 is penal in nature and must be strictly construed. 2018 IL App (1st) 162478, ¶ 29. The appellate court also relied heavily on cases involving fee-shifting provisions. See *Kay v. Ehrler*, 499 U.S. 432, 436-37 (1991) (holding, two years after the *Hamer* decision, that a *pro se* attorney was not entitled to recover attorney fees under 42 U.S.C. § 1988 (1988)); *Uptown People's Law Center v. Department of Corrections*, 2014 IL App (1st) 130161, ¶ 25 (following *Hamer* and holding that a private entity whose attorneys were salaried employees was not entitled to an award of attorney fees under Illinois FOIA because they did not actually incur legal fees); *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 110 (1997) (holding that nonlawyer *pro se* litigants are barred from collecting fees under Illinois FOIA); *Aronson v. United States Department of Housing & Urban Development*, 866 F.2d 1, 5 (1st Cir. 1989) (holding that plaintiff, who was attorney acting *pro se*, was not entitled to

attorney fees under federal FOIA). Relying on this fee-shifting precedent, the appellate court reversed the circuit court's finding that defendant was entitled to attorney fees under Rule 137 and vacated that award, holding that a *pro se* attorney is not entitled to receive attorney fees under Rule 137. 2018 IL App (1st) 162478.

¶ 25 Following the appellate court's decision in this case, and while this appeal was pending, this court issued another decision that relied on the rationale in *Hamer*. See *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487. In *My Pillow*, this court held a law firm that brought a *qui tam* claim under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2012)), using its own lawyers, was not entitled to an award of attorney fees. *My Pillow*, 2018 IL 122487, ¶ 37. Section 4(d)(2) of the False Claims Act (740 ILCS 175/4(d)(2) (West 2012)) contains a fee-shifting provision. In *My Pillow*, this court acknowledged that "Illinois has long followed the 'American rule' regarding the award of attorney fees." *My Pillow*, 2018 IL 122487, ¶ 17. "Under that rule, each party to litigation must normally bear its own litigation expenses, regardless of who won," and "[p]revailing parties are prohibited from recovering their attorney fees from the losing party absent express authorization by statute or by contract between the parties." *My Pillow*, 2018 IL 122487, ¶ 17.

¶ 26 In *My Pillow*, we recognized that in *Willard v. Bassett*, 27 Ill. 37 (1861), our court expressly rejected the notion that an attorney who represents himself or herself in a legal proceeding may charge a fee for professional services in prosecuting or defending the case. *My Pillow*, 2018 IL 122487, ¶ 22. In *Willard*, the issue concerned whether an attorney, who is the administrator of an estate, is entitled to an allowance against the estate for his professional services. The court recognized in *Willard* that the attorney was entitled to reasonable compensation for administering the estate but that he was not entitled to an additional fee for legal services rendered by him. *Willard*, 27 Ill. at 38. *My Pillow* quoted *Willard*'s rationale:

> " 'To allow him to become his own client and charge for professional services in his own cause, although in a representative or trust capacity, would be holding out inducements for professional men to seek such representative place[s] to increase their professional business, which would lead to most pernicious results. This is forbidden by every sound principle of professional morality as well as by the policy of the law.' " *My Pillow*, 2018 IL 122487, ¶ 22 (quoting *Willard*, 27 Ill. at 38).

¶ 27 *My Pillow* recognized that "our court has continued to adhere to the principle that it is contrary to the public policy of Illinois to allow an attorney 'to become his own client and charge for professional services in his own cause.' " *My Pillow*, 2018 IL 122487, ¶ 23 (quoting *Cheney v. Ricks*, 168 Ill. 533, 549 (1897) (following *Willard* in holding that where one of the complainants in a partition suit was an attorney who prosecuted the suit, he was not entitled to recover attorney fees)). *My Pillow* relied on *Hamer* in determining, "[t]o the extent that a lawyer elects to proceed *pro se* in a case for which the legislature has provided statutory authorization for an award of attorney fees, he or she therefore has no attorney fees to claim and is not entitled to an award of fees under the statute." *My Pillow*, 2018 IL 122487, ¶ 24 (citing *Hamer*, 132 Ill. 2d at 62-63). We also recognized that in *Kay*, 499 U.S. at 437-38, the United States Supreme Court reached the same conclusion when applying a federal fee-shifting statute. *My Pillow*, 2018 IL 122487, ¶ 24. We noted in *My Pillow* that *Hamer* has been applied in other contexts. See, *e.g.*, *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 678 (2003) (*pro se* attorney not entitled to an award of attorney fees in defending against malpractice action); *In re*

*Marriage of Pitulla*, 202 Ill. App. 3d 103, 117-18 (1990) (rule that attorneys appearing *pro se* are not entitled to recover attorney fees cited with approval in dissolution action); *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164 (2007) (law firm not entitled to an award of attorney fees for work done by its own lawyers in collecting fees owed to firm by client).

¶ 28    We find that *Hamer* and its progeny are distinguishable because those cases did not involve Rule 137 sanctions to compensate a *pro se* attorney defending himself against frivolous claims. The essential underlying policy of Rule 137 of discouraging frivolous or harassing litigation is furthered by imposing sanctions in the form of an award of attorney fees in favor of a *pro se* attorney defending against meritless claims. See *Sundance Homes*, 195 Ill. 2d at 285-86; *In re Estate of Wernick*, 127 Ill. 2d at 77. Here, defendant did not initiate or otherwise invite the frivolous pleadings. Nevertheless, defendant was forced to defend against the frivolous claims filed by plaintiff, also an attorney. If the policy of Rule 137 sanctions is to deter frivolous pleading and litigation, it would be illogical to deny attorney fees to *pro se* attorneys defending themselves in such matters.

¶ 29    The policy considerations underlying our decisions in *Hamer* and *My Pillow* on fee-shifting provisions are not present when a court awards sanctions under Rule 137. Here, sanctions are intended as a punishment against the party who abuses the judicial process, not as a reward to a successful *pro se* attorney who is defending against a frivolous lawsuit. The concern articulated in *Hamer* and *My Pillow* on deterring abusive fee generation by lawyers who initiate litigation is not present when sanctions are imposed *against a plaintiff* who files frivolous pleadings. This case does not involve awarding attorney fees to an attorney bringing suit as a plaintiff in his own name. Rather, defendant was forced to expend his time defending a frivolous lawsuit, as well as pursuing sanctions clearly provided for by Rule 137.

¶ 30    Other courts addressing this issue have similarly held that a *pro se* attorney defendant may be awarded attorney fees as part of a sanction for efforts in defending against a frivolous complaint. See *Burke v. Elkin*, 51 N.E.3d 1287, 1288 (Ind. Ct. App. 2016) (holding that, "[d]espite the American Rule, *** a party to a civil action may recover attorney fees incurred defending against a frivolous action or an action litigated in bad faith" and recognizing that Indiana had adopted the majority rule permitting an attorney representing himself to recover an award of attorney fees for time and effort spent defending against a frivolous lawsuit); *Stiles v. Kearney*, 277 P.3d 9 (Wash. Ct. App. 2012), *review denied*, 287 P.3d 11 (Oct. 10, 2012) (table) (*pro se* defendant who is an attorney can receive attorney fees for his effort in defending against complaint as part of sanction imposed against plaintiff for violation of rule in filing lawsuit); *Keaty v. Raspanti*, 2003-1080, p. 8 (La. App. Cir. 2/4/04); 866 So. 2d 1045 ("To hold that an attorney who must defend himself or herself cannot recover reasonable attorney's fees, including his or her own lost time and expenses in defending himself or herself [against frivolous litigation], would frustrate the purpose of the statute [to deter frivolous litigation] and possibly reward those who persist in maintaining litigation such as that found in this case."); *Friedman v. Backman*, 453 So. 2d 938 (Fla. Dist. Ct. App. 1984) (*pro se* defendant lawyer is entitled to attorney fees under statute allowing sanctions against plaintiff for filing frivolous pleadings). We find these cases persuasive.

¶ 31    We reiterate that "[t]he purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes*, 195 Ill.

2d at 286. To hold that an attorney cannot recover reasonable attorney fees in defending himself against frivolous litigation would clearly frustrate the purpose of Rule 137 and unfairly reward those who persist in maintaining frivolous litigation.

¶ 32 We hold that, under Rule 137, a court is authorized to impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous cause of action. Accordingly, we reverse that part of the appellate court decision holding to the contrary and remand with directions to conduct further proceedings on the issue of the proper amount of Gray's circuit court attorney fee award. That part of the appellate court decision affirming the circuit court's dismissal of plaintiff's tortious interference claim and finding that plaintiff violated Rule 137 is affirmed.

¶ 33 In his prayer for relief on his petition for leave to appeal, defendant also requests that this court impose sanctions against plaintiff under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) in the form of damages and the reasonable costs of defending the instant "frivolous" appeal. Defendant requests reasonable attorney fees, presumably for plaintiff taking an appeal from the trial court's ruling. Rule 375(b) provides that "[a] reviewing court may impose a sanction upon a party or an attorney for a party upon the motion of another party or parties, or on the reviewing court's own initiative where the court deems it appropriate." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Nothing in the record indicates that defendant filed any motion with the appellate court requesting sanctions against plaintiff for filing a frivolous appeal. Nonetheless, we remand this matter to the appellate court for further proceedings on this matter.

¶ 34                                      III. CONCLUSION

¶ 35 For the above reasons, we reverse that part of the appellate court judgment vacating Gray's attorney fee award and remand for further proceedings consistent with this opinion.

¶ 36 Affirmed in part, reversed in part, and remanded with directions.

¶ 37 CHIEF JUSTICE KARMEIER, concurring in part and dissenting in part:

¶ 38 I agree with Justice Garman's analysis insofar as she concludes that an award of "attorney fees" is inappropriate in this circumstance because there is no attorney-client relationship and thus no "attorney fees" have been incurred. I also agree with her assessment of what the majority is actually trying to accomplish: "[G]iven that a *pro se* attorney does not incur legal fees, the majority is essentially awarding 'attorney fees' to defendant to 'compensate' him, not for the fees he incurred to obtain legal representation, but for the opportunity costs he chose to forgo." *Infra* ¶ 64. Without going further, Justice Garman would apparently leave a *pro se* defendant to bear the brunt of a plaintiff's abusive litigation without recompense and allow the plaintiff to *benefit* from a defendant's decision to proceed *pro se*. That outcome seems to me inconsistent with the purpose and language of the rule; that is the result the majority is straining to avoid. "The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001); see Ill. S. Ct. R. 137 (eff. July 1, 2013). A *pro se* defendant is no less victimized by a vexatious and harassing action because he *is pro se*, nor is

the abusive plaintiff less deserving of sanction. By focusing on the happenstance that this defendant *is* an attorney, and twisting the definition of "attorney fees" to cover the time the defendant spent away from his practice, the majority's holding compensates *this* defendant and penalizes *this* plaintiff, but it leaves in analytical limbo—or worse—all other *pro se* defendants who are victimized by a plaintiff's abuse of the judicial process. On the other hand, although Justice Garman recognizes that "appropriate sanctions" "may include an order to pay the other party or parties the amount of reasonable expenses incurred," it is not clear that she would allow a *pro se* defendant to be compensated in an amount that reflects the "opportunity *** he chose to forgo," *i.e.*, the loss of livelihood occasioned by the need to respond to a plaintiff's vexatious and harassing action. (Emphases omitted.) *Infra* ¶ 64. I believe Rule 137 allows for that element of compensation.

¶ 39       Rule 137 uses the phrase "appropriate sanction" broadly. It lists two of the compensatory items that an order for sanctions "may include": defendant's "reasonable expenses incurred" and "attorney fees." As our appellate court has observed, the words "include" or "including" are ordinarily terms of enlargement, rather than restriction, and indicate that items enumerated are not meant to be exclusive. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 286 Ill. App. 3d 660, 667 (1997), *aff'd*, 183 Ill. 2d 470 (1998); *Friends for Murray Center Inc. v. Department of Human Services*, 2014 IL App (5th) 130481, ¶ 22 ("[T]he word 'including' generally does not connote exclusivity, but is ordinarily interpreted as a term of enlargement."). This court has interpreted the word "include" in the same manner. In *People v. Perry*, 224 Ill. 2d 312, 330-31 (2007), this court expounded upon the meaning of the term at some length:

> "According to Black's Law Dictionary, 'include' means:
>
> > 'To contain as a part of something. The participle *including* typically indicates a partial list <the plaintiff asserted five tort claims, including slander and libel>. But some drafters use phrases such as *including without limitation* and *including but not limited to*—which mean the same thing.' (Emphases in original.) Black's Law Dictionary 777-78 (8th ed. 2004).
>
> The law dictionary refers the reader to the term 'namely,' which means:
>
> > 'By name or particular mention; that is to say <the plaintiff asserted two claims, *namely* wrongful termination and slander>. The term indicates what is to be included by name. By contrast, including implies a partial list and indicates that something is not listed.' (Emphasis in original.) Black's Law Dictionary 1049 (8th ed. 2004).
>
> Similarly, the editor of Black's Law Dictionary observes in another work that:
>
> > '[I]ncluding is sometimes misused for *namely*. But it should not be used to introduce an exhaustive list, for it implies that the list is only partial. In the words of one federal court, "It is hornbook law that the use of the word *including* indicates that the specified list ... is illustrative, not exclusive." *Puerto Rico Maritime Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981).' (Emphases in original.) B. Garner, A Dictionary of Modern Legal Usage 431 (1995)."

¶ 40       Clearly, the listing of "reasonable expenses" and "attorney fees" in the rule was not meant to be exhaustive. Indeed, if the drafters of the rule had intended *only* "reasonable expenses" and "attorney fees" incurred, the phrase "appropriate sanctions" would be superfluous. When

interpreting supreme court rules, we are guided by the same principles applicable to the construction of statutes, and that being the case, we are here obliged to avoid a construction that renders a part of the rule superfluous or redundant and instead presume that each part of the rule has meaning. See *People v. Salem*, 2016 IL 118693, ¶¶ 11, 16.

¶ 41   If the phrase "appropriate sanctions" is to encompass something more than "reasonable expenses" and "attorney fees," and as the point of the rule is to punish the plaintiff by compensating the defendant for the costs of defending a frivolous suit, the defendant's loss of income attributable to that defense would reasonably be included within the ambit of "appropriate sanctions." Discretionary imposition of that element of cost upon a plaintiff who has initiated and perpetuated abusive litigation, as a means to make an innocent defendant whole—be that defendant an attorney, doctor, mechanic, or a practitioner of any other vocation—would seem to be a reasonable application of the rule. Interpreting the rule in this manner validates the language of the rule and advances its purpose as well. To do otherwise would allow an abusive plaintiff to benefit from a defendant's decision to proceed *pro se* and limit the circuit court's ability to mete out egalitarian justice to those who may well be without the means to hire an attorney.[3]

¶ 42   Applying the foregoing principles here, defendant is not entitled to "attorney fees" because, as demonstrated by Justice Garman, there was no attorney-client relationship and no attorney fees were generated. However, defendant may be entitled to loss of income attributable to the time he spent away from his practice defending against this frivolous lawsuit. Those two things may be, but are not necessarily, the same.

¶ 43   I would reverse the judgment of the appellate court and remand this cause to the appellate court for consideration of defendant's request for Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) sanctions, directing the appellate court to thereafter remand to the circuit court for a redetermination of "appropriate sanctions" consistent with the principles here expressed.

¶ 44   JUSTICE GARMAN, concurring in part and dissenting in part:

¶ 45   The majority concludes, as a matter of first impression, that a court may impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous action. For the following reasons, I respectfully dissent.

¶ 46   First, as this court explained in *State ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, "the real question before us is not what the law should permit but rather what the law, as written, does permit." 2018 IL 122487, ¶ 34. Rule 137 must be "strictly construed when determining what persons come within [its] operation." See *id. My Pillow* demonstrates:

> "Applying such a construction to section 4(d)(2) of the Act, we see nothing therein to suggest that when the General Assembly authorized recovery of 'reasonable attorneys' fees and costs' in *qui tam* actions, it intended to change the established common-law

---

[3]We should bear in mind that the imposition of Rule 137 sanctions is a matter within the discretion of the trial court. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16. In the event a defendant decides to retain counsel and the trial court determines that plaintiff's conduct is not *so* egregious as to warrant the imposition of sanctions, the defendant will be liable for his own attorney fees, which may amount to much more than his own loss of income.

rule in Illinois that litigants who choose to represent themselves rather than retain counsel incur no compensable attorney fees even if they are themselves lawyers and even if they have brought the action on behalf of their own law firm." *Id.*

¶ 47 Here, the majority attributes little value to the fact that, for over 150 years, *pro se* attorneys have not been permitted to obtain attorney fees for their own work.[4] See *id.* ¶ 22. Accordingly, if the drafters intended the term "attorney fees"[5] to be interpreted more broadly, *i.e.*, to apply in the context of Rule 137 sanctions where no attorney-client relationship exists and thus no attorney fees have been incurred,[6] the drafters most likely would have made such an understanding explicit, either in the plain language of the rule or in a committee comment.

¶ 48 Second, the majority dismisses the appellate court's reasoning because it relied upon cases involving fee-shifting provisions. The majority also states that the "concern articulated in *Hamer* and *My Pillow* on deterring abusive fee generation by lawyers who initiate litigation is not present." *Supra* ¶ 29; see *Hamer v. Lentz*, 132 Ill. 2d 49 (1989); *My Pillow*, 2018 IL 122487. Interestingly, however, the appellate court based its holding upon other policy reasons: (1) that the potential to recover attorney fees enables potential plaintiffs to obtain competent and independent counsel and, in a similar vein, an attorney who proceeds *pro se* is deprived of independent judgment; (2) that, in *Kay v. Ehrler*, 499 U.S. 432, 437 n.7 (1991), the United States Supreme Court indicated in a footnote that the existence of an attorney-client relationship is critical in establishing an objective assessment of meritorious claims; (3) that, "as in *Hamer*, courts consistently have considered the fact that *pro se* attorneys are not burdened by legal fees, such that the fees create a barrier to seeking representation"; and (4) that "courts have highlighted that nonattorney *pro se* litigants are not entitled to fees for the time they spend litigating their own cases; therefore, *pro se* attorneys should not be treated differently." *McCarthy v. Abraham Lincoln Reynolds, III, 2006 Declaration of Living Trust*, 2018 IL App (1st) 162478, ¶ 30.

¶ 49 It is not made clear in the majority opinion how not one of the enumerated policy reasons above carry over, in whole or in part, to the Rule 137 context. Also, the majority disregards the appellate court's decision due to a concern—abusive fee generation—to which the appellate court attached no weight.

¶ 50 Third, and in connection with my first concern, *Hamer* and *My Pillow* both clearly observed that a *pro se* attorney does not incur legal fees. *Hamer*, 132 Ill. 2d at 62 ("A lawyer representing himself or herself simply does not incur legal fees."); *My Pillow*, 2018 IL 122487, ¶ 31 ("in this case, there was nothing that could fairly be characterized as an attorney-client relationship from which an obligation or need to pay an attorney fee might arise"). Courts and

---

[4]Although attorney fees were awarded to a *pro se* attorney in a single appellate court case, *Department of Conservation v. Lawless*, 100 Ill. App. 3d 74 (1981), the reasoning is unpersuasive, particularly in light of this court's later decisions in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989), and *My Pillow*, 2018 IL 122487.

[5]Black's Law Dictionary defines "attorney's fee" as "[t]he charge to a client for services performed for the client, such as an hourly fee, a flat fee, or a contingent fee." Black's Law Dictionary 154 (10th ed. 2014).

[6]Black's Law Dictionary defines "*pro se*" as "[f]or oneself; on one's own behalf; without a lawyer" or as "[o]ne who represents oneself in a court proceeding without the assistance of a lawyer." Black's Law Dictionary 1416 (10th ed. 2014).

litigants are left with no explanation as to how *pro se* attorneys incur or become liable to pay attorney fees in the Rule 137(a) context but not pursuant to the provisions at issue in *Hamer* or *My Pillow*. See Ill. S. Ct. R. 137(a) (eff. July 1, 2013) ("reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee").

¶ 51    Fourth, the majority defers to out-of-state case law holding "that a *pro se* attorney defendant may be awarded attorney fees as part of a sanction for efforts in defending against a frivolous complaint." *Supra* ¶ 30; see *Burke v. Elkin*, 51 N.E.3d 1287 (Ind. Ct. App. 2016); *Stiles v. Kearney*, 277 P.3d 9 (Wash. Ct. App. 2012); *Keaty v. Raspanti*, 2003-1080, p. 8 (La. App. 4 Cir. 2/4/04); 866 So. 2d 1045; *Friedman v. Backman*, 453 So. 2d 938 (Fla. Dist. Ct. App. 1984). I do not find these cases persuasive.

¶ 52    As the majority notes, *Burke* held that " 'a party to a civil action may recover attorney fees incurred defending against a frivolous action or an action litigated in bad faith.' " *Supra* ¶ 30 (quoting *Burke*, 51 N.E.3d at 1288). For this proposition, *Burke* cited *Ziobron v. Crawford*, 667 N.E.2d 202 (Ind. Ct. App. 1996), another Indiana Court of Appeals decision. *Burke*, 51 N.E.3d at 1288-89. *Ziobron*, in turn, distinguished *Kay* and another Indiana case on the basis that those cases involved attorney fees that were authorized by a fee-shifting statute. 667 N.E.2d at 207-08. *Ziobron* noted that it was not aware of another Indiana case pertaining to attorney fees sought in the context of a malicious prosecution case. See *id.* at 208. However, the *Ziobron* court explained its holding:

> "the majority rule permits an attorney representing himself to recover an award of attorney's fees for his time and effort in defending a frivolous lawsuit. *Friedman v. Backman*, 453 So. 2d 938 (Fla.App. 1984); *Quick & Reilly, Inc. v. Perlin*, 411 So.2d 978 (Fla.App. 1984). The rationale of this rule is, 'as the saying goes, "a lawyer's time and advice are his stock in trade." ' *Friedman*, 453 So.2d at 938." *Id.*

¶ 53    In *Marion County Election Board v. Bowes*, the Indiana Court of Appeals held that a *pro se* attorney was not entitled to recover attorney fees or litigation expenses under the Indiana Access to Public Records Act for missed work and other employment opportunities. *Marion County Election Board v. Bowes*, 53 N.E.3d 1203 (Ind. Ct. App. 2016). *Marion* reasoned,

> "despite prevailing on the merits, Bowes is not entitled to recover attorney fees as there are none to recover. Even if a pro se litigant happens to be a lawyer, no attorney fees are earned unless independent counsel is engaged. As the United States Supreme Court recognized in *Kay*, 'the word "attorney" assumes an agency relationship,' one that cannot exist between an appellant and himself. [Citation.] The *Kay* Court highlighted the point by noting several definitions of the word 'attorney,' all of which emphasize the agency aspect[.]" *Id.* at 1207.

¶ 54    Nonetheless, the *pro se* attorney in *Marion* argued in part that he was entitled to attorney fees based on the court's earlier decision in *Ziobron*. *Id.* at 1209. Though it did not overrule *Ziobron*, *Marion* called *Ziobron*'s reasoning into question by noting that

> "[a]lthough another panel of this Court awarded attorney fees in *Ziobron*, we first disagree with the *Ziobron* Court's characterization of Ziobron's potential compensation as 'attorney's fees.' [Citation.] Again, use of the word 'attorney' indicates an agency relationship between lawyer and client, which did not exist in *Ziobron*."*Id.*

¶ 55    Moving on, the majority cites *Stiles*, 277 P.3d 9. There, the Washington Court of Appeals relied on its decision in *Leen v. Demopolis*, 815 P.2d 269 (Wash. App. 1992), which held that

- 13 -

an attorney appearing *pro se* could recover attorney fees because *pro se* attorneys must take time from their practices to prepare and appear just like any other attorney. *Stiles*, 277 P.3d at 16 (citing *Leen*, 815 P.2d at 277). In *Stiles*, the Washington Court of Appeals rejected the argument that it should instead follow *Kay*, reasoning that *Kay* was distinguishable, as it involved the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988 (2006)). *Id.*

¶ 56 As to *Keaty*, a Louisiana Court of Appeal observed in a footnote that:

"We note that to permit a lawyer to recover his or her fees representing himself or herself in a case for article 863 sanctions while not permitting a non-lawyer to recover the time and expenses that he or she has incurred while defending a sanctionable pleading, may seem unfair. That issue is not before us and is reserved for another day; however, we do not read article 863 as prohibiting a non-lawyer from recovering his or her lost time and expenses in an article 863 matter." *Keaty*, 2003-1080, p. 8 n.6 (La. App. 4 Cir. 2/4/04); 866 So. 2d 1045.

¶ 57 Though *dicta*, *Keaty* clearly acknowledged that its holding could be perceived as unjust. *Keaty* also did not explain how its reading of article 863 could be such that a *pro se* nonlawyer could recover attorney fees.

¶ 58 Finally, the majority cites *Friedman*, 453 So. 2d 938. *Friedman* stated that it seemed logical to award attorney fees to a *pro se* attorney because, "as the saying goes, 'a lawyer's time and advice are his stock and trade.' " *Id.* at 938.

¶ 59 The clear theme running through these cases is the belief that a *pro se* attorney should be compensated for the time spent being "forced to defend" against a frivolous action. I disagree with this line of reasoning for several reasons.

¶ 60 Most importantly, the majority's holding impermissibly carves out a special exception for attorneys. *Hamer* observed that other courts, concluding that *pro se* lawyers in Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, ¶ 201 *et seq.*) cases are not permitted to obtain attorney fees, observed that there is " 'no good reason for treating *pro se* lawyers any differently than *pro se* laypersons.' " 132 Ill. 2d at 58 (quoting *Aronson v. United States Department of Housing & Urban Development*, 866 F.2d 1, 5 (1st Cir. 1989)); *Falcone v. Internal Revenue Service*, 714 F.2d 646, 647 (6th Cir. 1983). Although *Hamer* declined to address this consideration, I believe that this matter deserves due consideration, as the majority now concludes—for the first time—that a *pro se* attorney is entitled to attorney fees. See *Hamer*, 132 Ill. 2d at 58-59 ("Whether a nonlawyer *pro se* litigant may recover attorney fees under the Illinois FOIA is a question that is not before us, and we express no opinion on the matter.").

¶ 61 As *Aronson* noted:

"Nor are we impressed by the argument that a *pro se* lawyer should be awarded fees because of the time he/she must spend on the case. The inference is that the time so spent means the sacrifice of fees he/she would otherwise receive. But a lay *pro se* must also devote time to the case. If such a litigant is a professional person, such as an author, engineer, architect, etc. the time expended may also result in loss of income. Lawyers are not the only persons whose stock in trade is time and advice." 866 F.2d at 5.

¶ 62 Additionally, *Aronson* accurately observed that it would be unseemly to treat *pro se* lawyers differently from *pro se* nonattorneys, because to allow the former but not the latter to

recover fees creates the appearance that courts are "especially solicitous for the economic welfare of lawyers." *Id.* at 6 ("This is not the type of image that enhances public respect for the bar or judiciary."); see also *Frison v. Mathis*, 981 A.2d 57, 63 (Md. Ct. Spec. App. 2009) ("Requiring that an attorney-client relationship exist before allowing the recovery of attorney fees avoids the public perception of unfairness in the legal system."); *Trope v. Katz*, 902 P.2d 259, 262 (Cal. 1995) (otherwise, it "would in effect create two separate classes of pro se litigants—those who are attorneys and those who are not—and grant different rights and remedies to each"); *cf. Lolley v. Campbell*, 48 P.3d 1128, 1134 (Cal. 2002) (declining to extend *Trope* where attorney fees were sought by an indigent employee who was represented by the labor commissioner). If a plaintiff brings a frivolous suit against a doctor who elects to proceed *pro se*, the doctor would be forgoing the time he could be spending treating sick patients. See *Trope*, 902 P.2d at 267.

¶ 63    The majority observes that defendant was "forced to defend" and "forced to expend his time defending" against the frivolous claim. *Supra* ¶¶ 28-29. But this characterization holds true for a *pro se* nonattorney defendant as well. In both circumstances, a frivolous action is being brought against both types of *pro se* parties. And both a *pro se* nonattorney defendant and a *pro se* attorney defendant are exercising the *choice* to defend against frivolous claims *pro se* and, as a result, are forgoing the opportunity to spend their time otherwise, *e.g.*, representing clients, treating patients, etc. Yet, to be eligible for attorney fees, the nonattorney is forced to incur a "potential out-of-pocket obligation" by retaining counsel, whereas the *pro se* attorney would not. See *Swanson & Setzke, Chtd. v. Henning*, 774 P.2d 909, 913 (Idaho Ct. App. 1989).

¶ 64    Because Rule 137 aims to deter frivolous pleading and litigation, the majority concludes that "it would be illogical to deny attorney fees to *pro se* attorneys defending themselves in such matters" (*supra* ¶ 28) and holds that "a court is authorized to impose sanctions in the form of attorney fees under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013) against a plaintiff to compensate an attorney defending himself against a frivolous cause of action" (*supra* ¶ 32). However, Rule 137 provides for "*appropriate* sanction[s], which *may include* an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." (Emphases added.) Ill. S. Ct. R. 137(a) (eff. July 1, 2013). Based on the plain language of the rule, other options exist for sanctioning a party who violated the provision. The word "appropriate" connotes a sanction that is proper in a given circumstance. Further, if the rule itself provides a judge with discretion not to award attorney fees, it is unclear how the denial of attorney fees in one circumstance would be illogical or defeat Rule 137's purpose. Finally, given that a *pro se* attorney does not incur legal fees, the majority is essentially awarding "attorney fees" to defendant to "compensate" him, not for the fees he incurred to obtain legal representation, but for the opportunity costs he chose to forgo.

¶ 65    For these reasons, I respectfully dissent.

¶ 66    JUSTICE NEVILLE took no part in the consideration or decision of this case.