# Illinois Official Reports

## Appellate Court

---

*Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant & Pancake House, Inc.*, 2021 IL App (1st) 192523

---

| | |
|---|---|
| Appellate Court Caption | LAW OFFICES OF BRENDAN R. APPEL, LLC, Plaintiff-Appellee and Cross-Appellant, v. GEORGIA'S RESTAURANT AND PANCAKE HOUSE, INC., an Illinois Corporation, and HARRY KULUBIS, Defendants-Appellants and Cross-Appellees. |
| District & No. | First District, Sixth Division No. 1-19-2523 |
| Filed | July 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2014-M2-000910; the Hon. Jeffrey L. Warnick, Judge, presiding. |
| Judgment | Affirmed in part and reversed and vacated in part. Cause remanded with instructions. |
| Counsel on Appeal | E. Tim Garris, of E. Garris Law Firm, LLC, of Elgin, for appellants. Brendan R. Appel, of Law Offices of Brendan R. Appel, LLC, of Northfield, for appellee. |

Panel            JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1       Following a hearing on a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013), the trial court found that plaintiff, the Law Offices of Brendan R. Appel, LLC, was entitled to sanctions in the amount of $5000 against defendants, Georgia's Restaurant and Pancake House, Inc. (Georgia's), and Harry Kulubis (collectively, defendants). The trial court denied plaintiff's request for an additional $14,000.00 and his request to file a fee petition in an effort to prove up the remaining damages and sanctions.

¶ 2       On appeal, plaintiff alleges that the trial court erred in (1) denying its request to file a fee petition for reasonable attorney fees and not issuing additional sanctions and (2) denying sanctions related to the motion to vacate.

¶ 3       On cross appeal, defendants allege that (1) the trial court did not have subject matter jurisdiction to hear plaintiff's Rule 137 motion, (2) the trial court erred in issuing $5000 in sanctions, and (3) sanctions are inappropriate under Rule 137 when they are based on discovery violations. For the following reasons, we reverse and vacate in part the trial court's August 21, 2019, order denying reasonable attorney fees. We affirm all other judgments of the trial court.

¶ 4                              I. BACKGROUND

¶ 5       On March 2, 2012, Kulubis, the owner of Georgia's, met with Appel, the owner of plaintiff. Plaintiff was hired to represent defendants in litigation against Selected Furniture LLC (Selected). Plaintiff represented defendants in breach of contract litigation from March 2012 to May 2014 in the circuit court of Cook County under *Selected Furniture LLC v. Georgia's Restaurant & Pancake House, Inc.*, No. 2012-M2-000300 (Cir. Ct. Cook County). After the litigation, plaintiff billed defendants on May 1, 2014, for $19,373.12, and Kulubis informed Appel that he did not intend to pay.

¶ 6       Defendants paid each invoice until April 2014. On May 1, 2014, plaintiff issued defendants a bill for work done in the previous month, which was $19,373.12. On May 5, 2014, Kulubis informed plaintiff that he was not going to pay "one dime" of the invoice. On May 6, 2014, plaintiff filed a motion to withdraw representation and terminated its relationship with defendants. Under plaintiff's breach of contract claim, plaintiff sought the $19,373.12, plus a 5% late fee for every month defendants were late.

¶ 7       On May 21, 2014, plaintiff filed a verified complaint against defendants, alleging breach of the terms of its engagement letter, signed by defendants on March 2, 2012, and in the alternative, *quantum meruit*. The agreement provided that plaintiff's fees would be calculated at an hourly rate, with rates set forth for attorney services and secretarial services, and bills would issue monthly. It included a late fee for invoices not paid within 30 days after invoice and further provided that reasonable attorney fees would be charged if defendants' failure to pay resulted in litigation.

¶ 8        As an alternative to its breach of contract claim, plaintiff sought the reasonable value of legal services rendered under *quantum meruit*. Plaintiff alleged that it rendered its services on behalf of defendants and was entitled to be paid the reasonable value of those services because defendants benefitted from and accepted the benefit of those services. Plaintiff sought the reasonable value of $19,373.12 for the services rendered by it through May 1, 2014.

¶ 9        On September 2, 2014, defendants filed a verified answer, affirmative defense, and counterclaim. Defendants alleged that plaintiff misrepresented the agreement, specifically denying that a monthly 5% late fee was included in the agreement, and that it was responsible for reasonable attorney fees in the event a fee dispute arose that resulted in litigation to enforce the agreement. Defendants further alleged that plaintiff mischaracterized the conversation with Kulubis on May 5, 2014. However, defendants alleged that the $19,373.12 in fees was based on an overinflated number of hours spent on litigation. Defendants alleged that Kulubis was informed by another unidentified attorney that the entire cost of litigation should have amounted to $6500 and that he told Appel to keep the litigation costs in that price range. Defendants denied that they breached the contract and denied that plaintiff represented them in litigation through trial and performed its obligations under the agreement. Lastly, defendants denied the entirety of plaintiff's *quantum meruit* count.

¶ 10       Defendants brought counterclaims for legal malpractice (count I), breach of fiduciary duty (count II), negligence (count III), a declaratory judgment (count IV), and breach of contract (count V).

¶ 11       Defendants' affirmative defense alleged setoff. Defendants alleged that it had at that point paid plaintiff $16,500, which was three times what it was originally quoted. If the trial court found that the plaintiff was owed any money, defendants contended that they were entitled to a setoff for the overpayment of legal fees and that it should come from that total.

¶ 12       Count I of defendants' counterclaim alleged legal malpractice when plaintiff's performance fell below the applicable standard of care when (1) plaintiff failed to provide a proper defense in the litigation and failed to allege appropriate counterclaims, (2) plaintiff failed to subpoena key witnesses for trial, (3) throughout the proceedings plaintiff purposefully attempted to prejudice the court against their clients, (4) plaintiff overbilled defendants unconscionable legal fees and expenses, (5) plaintiff failed to properly advise defendants, and (6) plaintiff lacked trial experience and did not tell this to defendants. As a direct and proximate result of the negligence and/or intentional failures, the court entered a judgment against defendants in favor of Selected, while it entered a *de minimis* judgment in favor of defendants. Defendants sought a total of $102,000 in damages for the following: $16,000 for the legal fees paid to plaintiff, $10,000 for the judgment entered against defendants in favor of Selected, and $76,000 for the lost revenue of net sales tax, labor costs, and costs of goods sold which defendants would have been awarded if plaintiff had handled the litigation properly.

¶ 13       Count II alleged that plaintiff breached its fiduciary duty and obligations. Defendants alleged that this breach occurred when (1) plaintiff mishandled the litigation from the start because he failed to mount a proper defense and appropriate counterclaims, was inexperienced, and overbilled defendants; (2) plaintiff refused to turn over defendants' file to a substituting attorney after defendants advised plaintiff that they were going to seek an appeal in the initial litigation; (3) plaintiff terminated its representation of defendants and filed a motion to withdraw in order to unduly prejudice the court against defendants; and (4) plaintiff sent defendants harassing invoices with the amount due including a reoccurring 5% monthly

interest amount even though the agreement signed stated it would be a one-time 5% penalty. In addition to the $102,000 in compensatory damages, defendants sought exemplary damages in excess of $100,000, attorney fees, cost of suit, and other relief as the trial court sought fit and proper.

¶ 14       Count III alleged plaintiff was negligent by carelessly and negligently (1) failing to plead the appropriate affirmative defenses and counterclaims in the litigation, (2) failing to inform defendants of his lack of trial experience, (3) failing to conduct the trial on litigation, (4) failing to properly introduce evidence of lost revenues during litigation, (5) inflating the hours worked on the litigation; (6) failing to protect defendants' interests from being severely prejudiced by prematurely entering a motion to withdraw, and (7) otherwise maintaining control and/or handling of their file on litigation. Due to plaintiff's negligence, defendants lost the original underlying case and had a reduced award of lost profits on its counterclaim.

¶ 15       Count IV sought a declaratory judgment and breach of contract. The agreement that the parties signed provided that a 5% late fee would be added to the invoice if payment were not received within 30 days. However, the agreement was silent as to the reoccurring nature of the 5% fee. Plaintiff allegedly breached the agreement by overinflating billable hours, terminating and withdrawing from litigation before the 30-day timeframe provided in the agreement expired, and incorporating the reoccurring 5% late fee into the agreement. Defendants' prayer for relief asked the court to declare and adjudicate the rights of the parties under the terms and provisions of the agreement. If the trial court found that plaintiff breached the agreement, defendants sought the reimbursement of attorney fees and other costs incurred in the action.

¶ 16       Count V alleged breach of the contract by plaintiff when it over-inflated the billable hours, terminated its representation and withdrew from the litigation, and incorporated an annual interest rate of 60% into the agreement that was signed by the parties but drafted by plaintiff.

¶ 17       On September 8, 2014, plaintiff sent a letter to defendants' attorney, explaining that the affirmative defense and counterclaim did not satisfy defendants' obligations pursuant to Rule 137 (Ill. S. Ct. R. 137 (eff. July 1, 2013)) because the pleadings contained many false and irrelevant statements. Plaintiff demanded that defendants immediately withdraw their counterclaims, or it would file a motion for sanctions pursuant to Rule 137. However, defendants did not file their motion to voluntarily dismiss the fiduciary duty (count II) claim until December 3, 2014, after plaintiff filed its motion for summary judgment. The motion was ultimately granted with prejudice on January 14, 2015.

¶ 18       On October 29, 2014, plaintiff filed a motion for summary judgment on its complaint for breach of contract. On December 3, 2014, in addition to the voluntary dismissal, defendants filed a response arguing that it was too premature to consider attorney fees because discovery had not yet commenced. The trial court disagreed and ruled that defendants' anticipatory breach gave plaintiff the right to withdraw. On January 14, 2015, the court granted plaintiff's motion for summary judgment in the amount of $24,735.56 and found that there was no evidence to suggest that the requested fees were unreasonable or unnecessary. While the court denied Plaintiff's demand for 5% late fees through October 2014, it allowed the statutory rate of 9% per annum to be applied. The trial court reserved ruling on plaintiff's claim for attorney fees until after defendants' counterclaims were resolved.

¶ 19       On February 25, 2015, plaintiff sent defendants interrogatories and a notice to produce documents that specifically requested that defendants identify their witnesses pursuant to Illinois Supreme Court Rule 213(f)(2) and (f)(3) (eff. Jan. 1, 2007). Defendants' answer named

two 213(f)(3) witnesses, namely Mr. Carter and Mr. Poulos. However, the answer failed to comply with the rule's disclosure requirements, which require "(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case." Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007).

¶ 20        On October 16, 2015, plaintiff's counsel sent a letter pursuant to Illinois Supreme Court Rule 201(k) (eff. July 1, 2014) to defendants' counsel, requesting witness information and other information within seven days or by October 23, 2015. Plaintiff also sought the answers to written interrogatories (Nos. 18, 19, and 20) and exhibits that defendants referenced in their counterclaim (A, B, C, and D). Having received no supplement, on October 28, 2015, plaintiff filed a motion to compel in an attempt to obtain the missing information.

¶ 21        On the same day, October 28, 2015, defendants filed their response to interrogatories. Interrogatory Nos. 18, 19, and 20 had no additional information regarding anticipated witness testimony or witness identity. Additionally, defendants objected to plaintiff's document request arguing that the documents sought were not within defendants' control, were outside the scope of litigation, and presented an undue burden on defendants.

¶ 22        On November 10, 2015, defendants provided a supplemental response to interrogatories. The interrogatories provided a complete answer for No. 18, stating that defendants intended to call Harry Kulubis, Harry P. Kulubis, Nick Giannis, and Brendan R. Appel. They would each testify to their personal knowledge of the agreement between the parties. However, defendants did not provide complete responses to interrogatory Nos. 19 or 20. Defendants provided information for two controlled witnesses, who would testify to the reasonableness of defendants' work and losses suffered by defendants; however, defendants noted that the "investigation continues." The court then continued the case more than a year out, to the year 2017, because the appeal against Selected, for which plaintiffs were initially hired, was still pending and ultimately settled. See *Selected Furniture, LLC v. Georgia's Restaurant & Pancake House, Inc.*, 2017 IL App (1st) 153652-U.

¶ 23        On December 5, 2017, the trial court ordered defendants to tender their Rule 213(f)(3) (Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007)) experts by January 5, 2018, at which time they again filed answers without the additional information that was sought by the motion to compel.

¶ 24        On December 10, 2018, plaintiff filed a motion to bar defendants' Rule 213(f)(3) controlled expert witnesses. Plaintiff argued that the witnesses should be barred because defendants were late filing the supplemental interrogatories.

¶ 25        The motion to bar argued that plaintiffs could not prepare for defendants' countersuit without having expert discovery completed. Plaintiff contended that defendants, in bad faith, were not complying. Plaintiff argued that defendants were ordered by the trial court on three different occasions to comply, and plaintiff gave defendants three additional deadlines that were not honored. Plaintiff sought to bar the expert witnesses in order to advance the litigation.

¶ 26        During this time, Defendants' counsel's motion to withdraw was filed on January 30, 2018, and granted on February 20, 2018. Defendants were ordered to have new counsel file an appearance within 35 days or by March 27, 2018; their new counsel filed an appearance on April 9, 2018.

¶ 27        Upon receipt of counsel's appearance on April 9, 2018, plaintiff sent defendants' new counsel a copy of its supplemental interrogatories, pursuant to Illinois Supreme Court Rule

213(f) (eff. Jan. 1, 2007), by e-mail. In the same e-mail, plaintiff cited Rule 201(k) and demanded an answer to the Rule 213(f)(3) supplemental interrogatories within 14 days, or by April 23, 2018. Defendants did not provide those supplemental interrogatories by that date.

¶ 28 On May 23, 2018, plaintiff sent another e-mail request, this time requiring an answer within 21 days, or by June 13, 2018. Subsequently, on June 13, 2018, plaintiff filed its second motion to compel. On June 26, 2018, the trial court granted defendants' motion for an extension of time to answer the Rule 213(f)(3) written discovery and continued the motion to compel. Defendants were ordered to answer the written discovery by August 10, 2018. On October 19, 2018, the trial court ordered defendants to comply with the written discovery within 28 days, or by November 7, 2018. Defendants did not comply.

¶ 29 On December 21, 2018, defendants filed a motion to voluntarily dismiss their counterclaim without prejudice and for other relief. Defendants explained that it wanted to dismiss the matters in order to limit the financial, mental, and emotional impact of the matters. The motion noted that there were no other pending matters except for plaintiff's request for attorney fees.

¶ 30 On January 3, 2019, the trial court granted plaintiff's motion to bar defendants' Rule 213(f)(3) witnesses, granted defendants' motion to voluntarily dismiss their counterclaims, and continued the proceedings to January 16, 2019.

¶ 31 On January 16, 2019, the trial court entered an order directing plaintiff to file its Rule 137 (Ill. S. Ct. R. 137 (eff. July 1, 2013)) motion for sanctions.

¶ 32 On February 8, 2019, plaintiff filed its Rule 137 motion for sanctions, alleging that defendants' counterclaim was a frivolous attempt to counteract plaintiff's suit. Plaintiff noted that defendants' unwillingness to withdraw the counterclaims, along with their failure to follow court orders and statutory obligations provided in Rule 137, justified sanctions. The sanctions motion sought a $5000 insurance deductible, time spent in depositions, and time spent preparing to defend against the malpractice claims. Plaintiff argued that the amount of time spent in defending the counterclaims amounted to approximately $14,000.

¶ 33 On March 1, 2019, defendants filed a response to plaintiff's Rule 137 motion for sanctions, arguing that the pleadings within their counterclaim were not false and plaintiff should be denied the requested relief. Plaintiff was unable to recover the $14,000 for its own time because Rule 137 does not provide for a *pro se* attorney to recover its own attorney fees. Even if it did, defendants argued that plaintiff failed to establish its damages. Defendants argued that they fully intended to litigate their claims despite noncompliance with Rule 213(f)(3), disclosing that they had retained two witnesses but decided against using them due to the costs.

¶ 34 On April 10, 2019, the trial court granted defendants' February 7, 2019, motion for summary judgment. Although summary judgment was granted, the trial court noted that the provision of the agreement that permitted the imposition of fees allowing attorneys to charge for collecting attorney fees was not enforceable. Plaintiff's motion for Rule 137 sanctions was continued.

¶ 35 On August 1, 2019, plaintiff filed a supplemental brief citing *McCarthy v. Taylor*, 2019 IL 123622. *McCarthy* presented the issue of whether a court can impose sanctions for the recovery of attorney fees under Rule 137. Plaintiff argued that *McCarthy* held that a court can impose attorney fees even if the attorney is *pro se*, if it was for time spent defending against a frivolous pleading. Based on that, plaintiff argued that it could be awarded attorney fees as sanctions for the time spent defending against the counterclaim. Plaintiff sought its $5000 deductible,

$14,000 for its own time spent on this case, and $72,266.02 that its insurance carrier spent on defendants' claims. In total, plaintiff sought $86,266.02 in fees.

¶ 36    On August 15, 2019, defendants filed a response, arguing that *McCarthy* was distinguishable from the case at hand. Defendants argued that plaintiff never represented itself *pro se* in the relevant portion of the underlying case. The attorney litigant in *McCarthy* asserted a cause of action that was legally incapable of succeeding from the start. Defendants' counterclaim against plaintiff was not frivolous or false, and defendants only dismissed their claims because it became too expensive to pursue. Next, defendants argued that, unlike plaintiff, the defendant in *McCarthy* provided itemized support to prove its damages and for the first time plaintiff was asking for the money spent by the insurance carrier.

¶ 37    At the hearing on August 21, 2019, after some confusion about why the parties were present, the trial court clarified that the parties had previously argued their respective motion and noted that no court reporter was previously present. The parties were only there to argue their supplemental motions regarding *McCarthy*. Defendants argued that many details in the counterclaim ranged from claims that plaintiff simply disagreed with to irrelevant claims, none of which could be characterized as sanctionable. Allegations consisted of claims such as failure to plead and inflated billing; no clear falsehoods were pled. Defendants argued that there was no support for the damages plaintiff sought, especially for the $14,000 in attorney fees and the $72,266.02 the insurance carrier spent on the case.

¶ 38    Plaintiff reiterated the merits of its motion by arguing that defendants never intended to litigate any of their counterclaims. This was demonstrated when they were barred for not providing the information for their expert witnesses. Plaintiff noted that the proposed named experts had expertise in criminal law and not in this type of case. Further, plaintiff argued that defendants never intended to litigate the case as evidenced by the fact that defendants kept changing attorneys. According to plaintiff, the counterclaim provided falsehoods with no factual basis accompanying them.

¶ 39    Plaintiff asserts that its pleadings contained the appropriate amounts of what it believed the damages to be. However, plaintiff asked the court to enter a finding of liability and allow plaintiff to file a fee petition in order to present more detailed records in the future. Plaintiff argued that *McCarthy* permits the trial court to enter a wide latitude of appropriate sanctions for defendants' violation of Rule 137. Plaintiff argued that the trial court could provide a sanction it deemed would punish or deter, or alternatively, plaintiff could file a petition for attorney fees. Plaintiff argued the latter is common practice because a typical petition for attorney fees would have to wait until the end because even the proceedings that they were apart of can be included in the fee petition. Customarily, plaintiff argued, filing the fee petition along with the motion for sanctions is improper because that leads to having a supplemental being filed as well.

¶ 40    In ruling on attorney fees, the trial court found it appropriate to find not only liability but reasonableness and to have the requested fees be supported all at once. The trial court noted that no party requested an evidentiary hearing; thus, it was waived and would make its determination based on the record. The trial court found plaintiff was not entitled to the amount of money the insurance company incurred because it was contractually obligated to take on those costs and there was nothing to show from the firm who represented plaintiff of how much they billed. Next, the trial court found that no one doubted that plaintiff had to pay the $5000 deductible. Lastly, the trial court determined that $14,000 in fees were not unreasonable based

on its experience. Working 14.1 hours, the trial court found, was not unusual for a trial attorney. The counterclaim was characterized as a "sham defense" or "one where the litigant does not feel like paying its attorney because for whatever reason he does not like the work done or the results." Although the trial court found that Appel was "probably" harmed from the counterclaim, there was no evidence to support the amount sought. As such, the trial court found that plaintiff was entitled to $5000 for the deductible, but not the $14,000 in fees. Thus, the trial court's order granted Rule 137 sanctions against defendants in the amount of $5000 and expressly stated that the order was final and appealable.

¶ 41    On September 19, 2019, defendants filed a motion to vacate on the basis of subject matter jurisdiction under Rule 137(b). See Ill. S. Ct. R. 137(b) (eff. July 1, 2013). Defendants argued that the trial court lost jurisdiction of plaintiff's Rule 137 motion because it granted defendants' voluntary motion to withdraw on January 3, 2019. Plaintiff had 30 days to enter its Rule 137 motion; however, plaintiff did not file its motion until 36 days after the trial court entered its order, on February 8, 2019. Defendants argued that the trial court's August 21, 2019, order, which granted plaintiff's motion for sanctions, must be vacated because plaintiff failed to file it within 30 days of the dismissal being granted. Defendants argued that the motion must be filed within 30 days of the judgment that conclusively resolved the claims in which the allegedly sanctionable conduct took place, citing *Lakeshore Centre Holdings, LLC v. LHC Loan, LLC*, 2019 IL App (1st) 180576, ¶ 11, as support. Defendants argued that the sanctionable conduct was the filing of the counterclaim, with the counterclaim being dismissed; this is what started the clock on the 30-day deadline.

¶ 42    On October 24, 2019, plaintiff filed a response to defendants' motion to vacate Rule 137 sanctions and cross motion for sanctions pursuant to Rule 137. Plaintiff argued that the January 16, 2019, court order was not included in defendants' appellate brief because, if it were, it would be apparent that the January 3, 2019, order was not final. The January 16, 2019, order expressly instructed plaintiff to file its motion for sanctions and summary judgment by February 7, 2019; therefore, the trial court retained jurisdiction. Additionally, plaintiff points out that the January 3, 2019, order did not expressly provide the required language in Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) in order to make it final and appealable as illustrated in *Lakeshore*. Plaintiff argued that the omission of the January 16, 2019, order was another act of sanctionable conduct by defendants and consequently sought additional sanctions in an amount deemed appropriate by the court.

¶ 43    On November 7, 2019, defendants filed a reply to plaintiff's response to defendants' motion to vacate. Defendants reiterated their argument that the trial court's granting of its motion to dismiss counterclaims was a final appealable order that caused the 30-day deadline to begin to toll, thereby negating the need for Rule 304(a) language. The counterclaim was a separate and distinct cause of action that was able to be brought separately. The dismissal of the counterclaim acted as a severance that could have allowed for defendants to file a separate action. Even if the trial court attempted to retain jurisdiction, it was without the authority to do so based on the timing deadlines provided in Rule 137(b). Defendants maintained that the motion to vacate complied with Rule 137 and that the counterclaim was made in good faith. Further, defendants argued that Rule 137 is not a mechanism for penalizing litigants who do not have successful arguments.

¶ 44    On November 22, 2019, the trial court denied defendants' motion to vacate the sanctions order of August 21, 2019. The trial court stated that the January 3, 2019, order was not made

final and appealable because the trial court did not manifest the intent in the order to do so and that no Rule 304(a) language was included. The trial court ordered defendants to pay plaintiff's sanctions no later than November 29, 2019, and denied plaintiff's cross motion for additional sanctions. Lastly, the court held that, pursuant to Rule 304(a), there was no reason to delay enforcement on appeal. Plaintiff timely appealed and defendants timely cross-appealed.

¶ 45                                     II. ANALYSIS

¶ 46        As noted previously, this appeal consists of a direct appeal by plaintiff and a cross appeal by defendants. In the direct appeal, plaintiff contends that the trial court erred (1) in denying its request to file a fee petition for reasonable attorney fees and not issuing additional sanctions, and (2) in denying sanctions related to the motion to vacate.

¶ 47        On cross appeal, defendants contend that (1) the trial court did not have subject matter jurisdiction to hear plaintiff's Rule 137 (Ill. S. Ct. R. 137 (eff. July 1, 2013)) motion, (2) the trial court erred in awarding $5000 in sanctions, and (3) sanctions were inappropriate under Rule 137 when they are based on discovery violations.

¶ 48                                    A. Fee Petition

¶ 49        Plaintiff contends that the trial court erred in not allowing it to file a fee petition. The fee petition would have been used to determine the proper scope and amount of fees to be awarded pursuant to the trial court's finding that defendants had violated Rule 137 in filing their counterclaims. Plaintiff cites to *Olsen v. Staniak*, 260 Ill. App. 3d 856, 859-60 (1994), as support to show that a trial court can hold hearings and consider motions first and then at a later date ask for evidence on damages. Plaintiff finds this logical because the full extent of the damage would not be known upon the filing of a Rule 137 motion because the costs of filing a reply brief and engaging in a hearing cannot be quantified beforehand. Additionally, plaintiff contends it would reduce the waste involved in preparing a detailed petition for the cases where the trial court denies Rule 137 liability.

¶ 50        Plaintiff contends that it presented evidence to show the amount of time expended in its own defense, which was $14,000; the deductible paid to its insurance carrier, amounting to $5000; and the $72,266.02 that the insurance carrier expended. Even though part of its attorney fees were *pro se*, plaintiff contends that they could be awarded as sanctions pursuant to Rule 137, citing to *McCarthy v. Taylor*, 2019 IL 123622, as support. Plaintiff contends that, pursuant to Rule 137, the trial court can provide an "appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 51        In response, defendants contend that the trial court did not err in denying plaintiff's request to file a fee petition to determine Rule 137 sanction fees because plaintiff failed to meet the requirements pursuant to Rule 137. Defendants contend that plaintiff failed to plead its damages with specificity and should have stated within the motion how the amount of attorney fees billed and/or requested are reasonable and provided for support. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460 (1998).

¶ 52        Ordinarily, a trial court's denial of a fee petition is reviewed for abuse of discretion. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595 (2000). However,

when interpreting a supreme court rule, which is a question of law, we review *de novo*. *McCarthy*, 2019 IL 123622, ¶ 17. Rule 137 is penal in nature; therefore, it is narrowly construed. *Id.*

¶ 53        Defendants' argument, in agreement with the trial court's decision to deny attorney fees, is unpersuasive. Defendants contend that plaintiff's motion failed to plead with specificity the amount of attorney fees billed and requested in the Rule 137 motion for sanctions and cites *Dowd*. However, plaintiff did specify the amounts sought in the motion for sanctions. It requested $14,000 for reasonable attorney fees and $5000 for the deductible paid to its insurance company. Further, *Dowd* is distinguishable because that case dealt with how meritorious claims can avoid being considered sanctionable conduct. *Dowd*, 181 Ill. 2d at 487-88. Unlike in *Dowd*, the trial court in this case found that defendants' counterclaim was without merit and the requested fees were not unreasonable.

¶ 54        Denying plaintiff reasonable attorney fees would garner a result that is incompatible with Rule 137. We have consistently rejected the denial of attorney fees when it is incompatible with the purpose of the statute. *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 42. "The purpose of Rule 137 is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions ***." *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 285-86 (2001). Rule 137 states:

> "Every pleading, motion or other document of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." Ill. S. Ct. R. 137(a) (eff. July 1, 2013).

¶ 55        Therefore, Rule 137 provides that when a party or counsel signs a pleading that is not grounded in good faith, facts, or existing law, reasonable attorney fees are an appropriate sanction. In this case, the trial court determined that defendants' counterclaim amounted to a "sham defense." This conduct is the type that Rule 137 seeks to provide sanctions for.

¶ 56        The supreme court has recently held that Rule 137 permits a court to impose sanctions for attorneys who represent themselves *pro se* against frivolous or harassing claims. *McCarthy*, 2019 IL 123622, ¶ 28. *McCarthy* held that "[t]he essential underlying policy of Rule 137 of discouraging frivolous or harassing litigation is furthered by imposing sanctions in the form of an award of attorney fees in favor of a *pro se* attorney defending against meritless claims." *Id.*

¶ 57        As a result of finding that defendants' counterclaim was frivolous, the trial court should have issued an appropriate sanction that both deters this behavior and compensates a *pro se* attorney for spending time defending against such actions. See *id.* Even though the court

granted $5000 for the insurance deductible, that does not compensate plaintiff for the time spent defending against what the trial court has described a "sham defense."

¶ 58    We find Rule 137 sanctions to be analogous to contempt sanctions. In contempt proceedings, which are also punitive in nature, the court determines whether an action is contemptuous, then grants leave to file a petition for fees. For example, in dissolution of marriage cases, section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2018)) provides that the trial court has no discretion as to whether to award reasonable attorney fees and costs incurred in enforcement of its orders; its only discretion is to decide whether the failure to pay was without cause or justification. If the trial court so finds, the award of reasonable attorney fees and costs is mandatory. *Elliott v. Elliott*, 137 Ill. App. 3d 277, 280 (1985). In chancery cases, courts have held that a court may properly assess attorney fees as a sanction in a contempt proceeding, provided that the fees have been shown to be reasonable through detailed time records submitted to the court. See *City of Rockford v. Suski*, 307 Ill. App. 3d 233, 248 (1999). In such cases, upon the finding of contempt, courts typically require a separate petition for attorney fees to aide in determining whether the fees are necessary and reasonable.

¶ 59    Similarly, the court can approach Rule 137 sanctions using a twofold process. Here, the court should first determine whether the conduct was violative of Rule 137, then grant leave to file a petition for attorney fees. Hence the petition for attorney fees would be heard separately from the Rule 137 determination. In addition to assisting the court with assessing the reasonableness of fees, a separate petition and hearing would give the attorney an opportunity to provide not only itemized billing for time spent prior to the court's ruling but also include actual time spent during the hearing on the motion for sanctions. This twofold process can also be accomplished in a single hearing, provided the court has the necessary information to make a determination as to the amount of fees. This court has previously held that "[a]n evidentiary hearing is not always necessary in order to determine reasonable attorney fees if the trier of fact can determine a reasonable amount from the evidence presented." *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 49. However, when that information is not available, the proceedings should be continued for that purpose. Therefore, based on the punitive nature of Rule 137, the supreme court decision in *McCarthy*, and the above analysis, we find that plaintiff is entitled to file a petition for reasonable attorney fees.

¶ 60                          B. Motion to Vacate Sanctions

¶ 61    Plaintiff contends that the trial court erred in not granting Rule 137 sanctions for defendants' filing of a motion to vacate, which plaintiff characterizes as sanctionable conduct. Plaintiff contends that defendants should not have filed a motion to vacate because a review of the applicable law would have demonstrated that the basis of their motion was frivolous. Plaintiff finds that the January 16, 2019, order and case law destroy any legitimate basis to vacate because the trial court retained jurisdiction, citing *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977 (1994), as support. Lastly, the trial court's January 3, 2019, order's omission of Rule 304(a) language (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) further demonstrates that the motion to vacate would have been unfounded.

¶ 62    Defendants contend that the Rule 137 motion for sanctions for filing the motion to vacate was not pled with specificity and was untimely. They assert that the motion to vacate provided

no false statements and the omission of the January 16, 2019, order was not done so in bad faith. Additionally, defendants still maintain that plaintiff's Rule 137 motion was untimely as it was filed 30 days past the January 3, 2019, order dismissing defendants' counterclaims.

¶ 63 The trial court's decision to impose sanctions is within the sound discretion of the trial court, and that decision will not be disturbed on review absent an abuse of discretion. *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 109 (1998). "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed." *Id.* "When relief under Rule 137 is sought, the petition must meet certain specificity requirements. It must identify: (1) the offending pleading, motion, or other paper; (2) which statements in the document were false; and (3) the fees and costs that directly resulted from the untrue allegations." *In re Marriage of Adler*, 271 Ill. App. 3d 469, 476 (1995).

¶ 64 The November 22, 2019, order denying the Rule 137 motion for sanctions, based on the defendants' motion to vacate, did not detail the trial court's reasoning. Therefore, relying on our own review of the record, we agree with defendants that plaintiff failed to specify any false statements made in the motion to vacate. Although plaintiff harps on the omission of the January 16, 2019, order, we decline to consider whether the omission of the order constitutes a false statement. Additionally, plaintiff failed to identify any fees directly associated with any untrue allegations in its Rule 137 motion for sanctions. As such, plaintiff gave the trial court the discretion to set the fees that it would find appropriate to deter and penalize defendants' conduct and did not identify any fees or costs that were a direct result of a false allegation. Accordingly, the trial court did not err in denying the sanctions when the pleadings were insufficient.

¶ 65          C. Subject Matter Jurisdiction

¶ 66 Defendants contend that plaintiff failed to file its Rule 137 motion for sanction in a timely matter in accordance with the rule; therefore, the trial court did not have subject matter jurisdiction to enter the August 21, 2019, order. Defendants' motion to voluntarily dismiss its counterclaim was granted on January 3, 2019, and defendants accordingly contend that this date was final and appealable because all of its claims were dismissed. Thus, the plaintiff was required to file the motion within 30 days of this date. However, plaintiff did not file the motion until February 8, 2019, 36 days after the dismissal was granted. Defendants contend that the January 3, 2019, order was final and appealable because a counterclaim is a distinct and separate cause of action, even though no Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) language was included.

¶ 67 Plaintiff contends that the January 3, 2019, order did not dispose of all the issues in this case. Prior to that order, the trial court entered a partial summary judgment on January 14, 2015, reserving ruling specifically on attorney fees on its complaint; the January 3, 2019, order simply disposed of defendants' counterclaim. Plaintiff contends that a final judgment is one that leaves nothing remaining except the execution of judgment, citing *F.H. Prince & Co.*, 266 Ill. App. 3d at 982, as support. There was still a portion of plaintiff's complaint that the trial court needed to rule on. Plaintiff asserts that the matters cannot become appealable where there remain existing underlying claims and the court does not expressly reference Rule 304(a), citing *Lakeshore Centre Holdings*, 2019 IL App (1st) 180576, ¶ 20, as support. Additionally, plaintiff contends that the trial court retained jurisdiction by granting a continuance on the remaining matter of plaintiff's request for attorney fees in the January 16, 2019, order.

¶ 68    Whether a trial court had subject matter jurisdiction is a question of law that we review *de novo*. See *Id.* ¶ 9. Rule 304(a) language must be expressly stated in the trial court's order to make the order final and appealable when part of the case or parties are disposed of and other claims or parties remain. *Id.* ¶ 20. Alternatively, if the trial court "enters a final judgment disposing of all of the claims of all the parties, a litigant has 30 days from the entry of that final judgment to assert a Rule 137 claim." *Id.* An order entered is not a final judgment when a request for attorney fees is pending. See *F.H. Prince & Co.*, 266 Ill. App. 3d at 984-85.

¶ 69    In this case, after defendants dismissed their counterclaim, plaintiff still had the matter of its request for attorney fees resulting from defending against defendants' counterclaim. Even though the trial court granted defendants' motion to dismiss, the judgment was not final because of the pending request. The trial court had the ability to make the order final and appealable but did not. The absence of the Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) language from the trial court in its January 3, 2019, order demonstrates that the order was not final and appealable. The trial court further demonstrated that it retained jurisdiction when it provided subsequent court dates on pending matters and instructed the defendants to file its motion for sanctions after 30 days of January 3, 2019. Further, the trial court expressed its intention to not have the January 3, 2019, order to be final and appealable in its November 22, 2019, order denying the motion to vacate. Therefore, we must find that the trial court indeed had subject matter jurisdiction over plaintiff's Rule 137 motion for sanctions.

¶ 70                          D. The Award of $5000 in Sanctions

¶ 71    On cross appeal, defendants contend that the $5000 awarded in sanctions was an abuse of discretion because defendants' counterclaim was reasonable, given the circumstances at the time of filing. Defendants contend that its counterclaim was reasonable for the following reasons: (1) the legal malpractice claim had circumstantial evidence presented when the pleadings showed that a lawyer told a client that there was a strong claim for $113,000, the client ended up with $2694.96, and it was admitted to by the plaintiff in pleadings; (2) seeking to collect attorney fees for one's own work is against public policy; (3) a verified allegation by Kulubis, describing his interactions between him and Appel, included discussions of personal interactions regarding the costs, explained how Appel would collect fees from award on counterclaim, and then, during trial, informed Kulubis that he was unable to be awarded attorney fees because they were not contractually or statutorily based; and (4) evidence of a transcript showed that Appel forgot to allege a counterclaim for breach of implied warranty of merchantability, which was noted by the court. These facts, defendants contend, demonstrate that the counterclaims were made on reasonable inquiry, were well grounded in fact and warranted by existing law or a good faith argument, and were not done to harass or to cause unnecessary delay or needless cost of litigation citing *In re Marriage of Schneider*, 298 Ill. App. 3d 103 (1998), as support.

¶ 72    Additionally, defendants contend that the trial court failed to issue a written order that had the requisite specificity requirements. Instead of finding explicit factual findings, defendants contend that the trial court made multiple generalizations and conclusions for why sanctions were due, which is an abuse of discretion, citing *Airolen Capital Ventures, Inc. v. Petri*, 265 Ill. App. 3d 80, 82-83 (1994). Defendants contend that the trial court should have held an evidentiary hearing in ordering the $5000 in sanctions and that because there was no hearing, the trial court abused its discretion in granting that award.

¶ 73       Plaintiff argues that the $5000 in sanctions was too small of an award, that the trial court did not abuse its discretion in finding the defendants' counterclaim sanctionable, that no evidentiary hearing was needed to award the $5000, and that defendants waived any arguments concerning the evidentiary hearing because they did not request one. Lastly, plaintiff contends that the transcript contains a thorough analysis of its decision with explicit factual findings.

¶ 74       The trial court's decision to impose sanctions is within the sound discretion of the trial court, and that decision will not be disturbed on review absent an abuse of discretion. *In re Marriage of Schneider*, 298 Ill. App. 3d at 109. "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed." *Id.* A trial court exceeds its discretion regarding the imposition of sanctions under Rule 137 only where no reasonable person would take the view adopted by it. *Id.*

> "A party seeking the imposition of Rule 137 sanctions against an opponent is the burdened party [citation], and a hearing is necessary to determine whether any untrue statement within a pleading was made without reasonable cause, unless the court's determination of the issue can be made on the basis of the pleadings or trial evidence." *Id.*

¶ 75       The trial court did not abuse its discretion in ruling in favor of the Rule 137 motion for sanctions because the counterclaim defendants filed was unreasonable. Ultimately, the trial court found that, in its experience, defendants' counterclaim fits what is commonly known as a "sham defense." The court noted that at the time of the filing, defendants were informed by plaintiff that the claims were frivolous and gave defendants the opportunity to withdraw them. Plaintiff represented defendants in litigation, and payment never became a problem until defendants were unsatisfied with the results after litigation. The trial court noted it had 20 years of experience in billing at a law firm. The amount plaintiff charged per hour was set out in the agreement and, based on the trial court's common experience, was not unreasonable. When defendants refused to pay, plaintiff had no choice but to file a breach of contract claim, to which defendants filed a counterclaim. Looking at the claims, the trial court found them to be conclusory. The majority of the claims the trial court found are typically alleged when a client is unhappy with the work of an attorney. Further, the trial court found that the complaint relied on a lot of oral representations of what was expected but yet there was a written agreement that provided the terms and details of the relationship. The trial court noted that plaintiff's insurance carrier had to provide a defense that exceeded $70,000, against unwarranted allegations, that were not supported by evidence, discovery, or witnesses. Based on this, the trial court found the claims to be unfounded and that sanctions pursuant to Rule 137 were warranted.

¶ 76       The trial court provided a thorough and well-reasoned record of why it believed sanctions were warranted. Defendants' actions and representations demonstrated that the counterclaims were unreasonable and conclusory in nature. The trial court noted that even those claims that defendants referenced as reasonable were reliant on mere oral representations, despite the written agreement that the parties were bound to. Thus, the trial court's determination that sanctions were appropriate is not one that no reasonable person would adopt. See *id.*

¶ 77       Defendants next contend that the trial court should have conducted an evidentiary hearing prior to issuing an award. The trial court relied on the representations of plaintiff's in issuing the $5000 in sanctions. We agree with plaintiff that no evidentiary hearing was needed to issue

an award. This court has held that no evidentiary hearing is required to award sanctions pursuant to Rule 137. *Olsen*, 260 Ill. App. 3d at 862.

¶ 78 Next, defendants contend that the trial court failed to state with specificity the reasons and the basis of any sanction imposed in its order. Rule 137(d) requires the following:

> "(d) Required Written Explanation of Imposition of Sanctions. Where a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 137(d) (eff. July 1, 2013).

This court has held that when an order fails to provide specific factual findings, it will be deemed deficient pursuant to Rule 137. See *Airolen*, 265 Ill. App. 3d at 82-83. In *Airolen*, the trial court entered an order with three conclusory sentences issuing sanctions pursuant to Rule 137. *Id.* at 82. This court found that the trial court needed to demonstrate within the order how it arrived at the decision. *Id.* at 83. Here, the trial court provided the following in its written order stating:

> "1. For the reasons stated on the record, see transcript the court grants plaintiff's Rule 137 motion against Defendant's Georgia's Restaurant and Pancake House, Inc. and Harry Kulubis;
>
> 2. Defendants are ordered to Pay Plaintiff Five Thousand Dollars ($5,000) as a sanction; and
>
> 3. This order is final and appealable, and there is no just cause to delay enforcement hereof."

¶ 79 Similar to the court in *Airolen*, the trial court provided three conclusory sentences in its order. However, we have also held that when the order incorporates by reference a document that may be read that contains the trial court's reasoning, it would be sufficient. *Kellett v. Roberts*, 276 Ill. App. 3d 164, 172 (1995). In *Kellett*, this court found that when the trial court incorporated by reference the plaintiff's written motion and adopted its reasoning, that was sufficient for this court to review because it provided this court the opportunity to determine whether the court's decision was an informed one. *Id.* Similarly, the trial court in this case incorporated by reference the transcript that was provided in the record. The transcript detailed the basis the trial court determined to either grant or deny sanctions. Although we would prefer to have a detailed order that provides for the trial court's reasoning, we find this to be sufficient.

¶ 80 E. Sanctions Improper Under Rule 137

¶ 81 On cross appeal, defendants contend—citing *Wadden v. Village of Woodridge*, 193 Ill. App. 3d 231 (1990), as support—that an award of sanctions based on the discovery violation of its barring of defendants' Rule 213(f)(3) witnesses is more appropriate under Rule 219 than Rule 137. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007); R. 219 (eff. July 1, 2002); R. 137 (eff. July 1, 2013).

¶ 82 A court's ruling on what sanction, if any at all, is appropriate will not be disturbed absent an abuse of discretion. *Wadden*, 193 Ill. App. 3d at 242. In *Wadden*, this court held that when sanctions are issued for discovery abuses, they are more properly imposed under Rule 219. *Id.* Here, the trial court did not issue sanctions for each discovery violation committed by defendants. Instead, the trial court looked at the conduct of defendants as a whole to determine whether the counterclaim was one where defendants intended to litigate in good faith pursuant

to Rule 137. Defendants' failure to provide witness information and provision of false and conclusory statements were the basis for the Rule 137 sanctions. Accordingly, we conclude that the trial court did not abuse its discretion by issuing sanctions pursuant to Rule 137.

¶ 83                                                    III. CONCLUSION

¶ 84        We affirm in part and reverse and vacate in part. We affirm the August 21, 2019, order that granted plaintiff's initial Rule 137 sanctions for $5000. The trial court's denial of sanctions as related to the motion to vacate is affirmed as a result of insufficient pleadings. We reverse and vacate the trial court's denial of attorney fees and remand for the plaintiff to file its petition for reasonable attorney fees and for the court to conduct a hearing on said petition. For future reference, we strongly encourage the trial court to specify its findings, pursuant to Rule 137(d) (Ill. S. Ct. R. 137(d) (eff. July 1, 2013)), regarding how it reached its decision for sanctions, if any.

¶ 85        Affirmed in part and reversed and vacated in part.
¶ 86        Cause remanded with instructions.