NOTICE

Decision filed 10/21/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210382-U

NO. 5-21-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-1245 |
| | ) | |
| DEMON L. KNIGHT, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We dismiss the appeal for defendant's failure to comply with Rule 604(d).

¶ 2   Defendant, Demon Knight, appeals his conviction of aggravated discharge of a firearm, arguing the court failed to properly admonish him pursuant to Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001) and abused its discretion in finding him fit. For the reasons stated herein, we dismiss the appeal.

¶ 3                                I. BACKGROUND

¶ 4   On October 2, 2017, defendant was charged with aggravated discharge of a firearm, in violation of section 24-1.2(a)(3) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(3) (West 2016)) regarding an incident in which defendant discharged a firearm in the direction of State Trooper Matt Bradford while Trooper Bradford was engaged in the execution of his official

1

duties. On October 20, 2017, a grand jury indicted defendant for the same charge as well as attempted murder in violation of section 9-1(a)(1) of the Code (*id.* § 9-1(a)(1)) and unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)).

¶ 5 On May 22, 2019, the court entered an order stating it raised a *bona fide* doubt about defendant's fitness to stand trial and Dr. Cuneo was appointed to examine defendant. Dr. Cuneo submitted a fitness report on July 20, 2019. In the report, Dr. Cuneo stated that defendant had paranoid, but not delusional, thinking. Defendant was oriented, and while no formal intellectual testing was administered, defendant appeared to function with at least a "dull normal" range of intelligence. Defendant's memory was impaired, but it appeared to be due to defendant's lack of cooperation rather than any specific memory difficulties. Dr. Cuneo diagnosed defendant with paranoid personality disorder that did not substantially impair his ability to understand the nature and purpose of the proceedings against him or his ability to assist in his own defense. Dr. Cuneo opined that defendant was fit to stand trial.

¶ 6 On August 1, 2019, the trial court entered an order, noting that defendant and the State stipulated that Dr. Cuneo was qualified as an expert in clinical psychology and would testify consistent with his July 20, 2019, report. The order then stated, "Based upon those stipulations the court finds that the defendant is fit to stand trial."

¶ 7 At some point between May 22, 2019, and August 16, 2019, the court appointed counsel to represent defendant. However, because several dates are absent from the report of proceedings and there is no entry of appearance on the record, it is unclear exactly when counsel was appointed.

¶ 8 On February 6, 2020, the State filed an amended complaint. The complaint charged defendant with attempted first degree murder (*id.* §§ 8-4(a), 9-1(b)(1)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)).

2

¶ 9     At a hearing on February 18, 2020, defense counsel indicated that defendant no longer wanted counsel to represent him. Defendant stated that there would be no trial. The court replied that it would decide whether there was a trial, and defendant asked if the court was going to maliciously prosecute him. Defendant clarified that he did not want to proceed to trial. The court said that was a little different from saying there would be no trial, but it was the court's understanding that defendant did not want to enter a plea. Defendant replied that the State was not offering a feasible plea agreement. Defendant referred to a "straw man" and a contract, and the court explained that a contract was not at issue and contracts were civil. After inquiry from the court, defendant stated that he discussed what he would consider for a plea agreement with counsel, but the State rejected his terms. Counsel averred that he had been engaged in negotiations, but defendant did not want to accept the State's offers. The court told defendant that if he did not want to accept the State's offer or go to trial, he could enter an open plea. Defendant said he asked counsel about a bench trial, but counsel advised against it. The court suggested defendant listen to counsel's advice as counsel was experienced, smart, and competent. The court then explained to defendant his options to take the State's plea offer, enter an open plea, or go to trial, and recessed court to allow defendant time to consider his options.

¶ 10    When the hearing reconvened, the parties announced that they reached a plea agreement. Under the agreement, defendant would plead guilty to aggravated discharge of a firearm, the State would dismiss the remaining counts, and defendant would be subjected to a sentencing range of 20 to 40 years' imprisonment. In announcing the terms of the agreement, the State noted that the sentencing range for the offense would have been 10 to 45 years' imprisonment, which was enhanced from a normal Class X felony sentencing range because defendant discharged the firearm in the direction of a police officer engaged in the execution of his official duties. Defendant stated

3

that he understood the terms of the plea agreement were as the State reported. Defendant also averred that he had no mental or physical disability to impair his understanding of his actions and did not take any medication.

¶ 11 The court then explained the nature of the charge and applicable sentencing range, to which defendant stated he understood. The court admonished defendant of his rights, and defendant stated he understood.

¶ 12 After the State provided the factual basis, defense counsel stipulated that the evidence was sufficient. Defendant stated that no one threatened, promised, or coerced him into entering the plea. He further stated that he was entering the plea freely and voluntarily. Thereafter, the court accepted the plea.

¶ 13 On March 30, 2020, defendant filed, *pro se*, an "Affidavit for Discharge Due to Lack of a Jurisdiction." The affidavit claimed defendant never knowingly or intentionally waived any rights, gave personal jurisdiction to the court, or granted subject matter jurisdiction. It further contended that he had been under a state of constant threat, duress, coercion, and undue influence. The document challenged the authority of the St. Clair circuit court, arguing it did not have lawful authority over him or any other person.

¶ 14 The same day, defendant filed, *pro se*, two documents titled "Affidavit to Rescind all Signature and all Pleas Entered." In both documents, defendant alleged all his statements and pleas were made under the threat, duress, coercion, under influence, and intimidation. Both further stated, "I here by take back ALL statements and pleas in a timely fashion."

¶ 15 On June 17, 2020, defendant filed, *pro se*, a "Declaration of Non-consent." In this document, defendant stated that he did not give legal consent to receive counsel from the public defender's office or any other form of counsel and would continue to proceed "*propria persona*."

4

¶ 16    On June 30, 2020, defendant filed, *pro se*, a document titled "Ineffective Assistance of Counsel," in which defendant declared a claim of ineffective assistance of counsel. He further stated that the public defender was forced upon him by the judge.

¶ 17    On July 13, 2020, the court held a hearing, during which defendant stated counsel was appointed to him in violation of his sixth amendment and that he felt threatened. The court asked defendant if he knew the duties of defense counsel, the State, and the court. As to defense counsel, defendant replied that the court appointed counsel as stand-by and stated, "If she's my stand-by, then I have no challenge in jurisdiction, because I become warden of the State" and that was why he did not want her appointed. He stated, "I'm the power of attorney for myself." As to the State's function, defendant replied that it was to argue the complaint against him. Defendant stated the court's function was "quasi jurisdiction" and "more like a referee." After the court asked about Dr. Cuneo's previous report of defendant, defendant requested the court acknowledge him as the beneficiary and discussed his rights under the Uniform Commercial Code (UCC). The court then stated it was going to reset the matter so Dr. Cuneo could be in the courtroom when it performed the preliminary examination of defendant's claims pursuant to *Krankel* and any other matters. It subsequently stated, "One of the things that you filed was akin to or like withdrawing your plea. You're saying it wasn't voluntary. I can't address that until after sentencing. *** Once you're sentenced, then the motion can be addressed in terms of withdrawing your plea."

¶ 18    On July 30, 2020, the court held a hearing. From the outset, the court noted that it was trying to determine how best to proceed with defendant's case regarding claims he raised concerning counsel. Defendant stated that he pled guilty under duress from counsel who said that going to trial would not be successful. The court asked if defendant remembered the court announcing that the sentence range for aggravated discharge of a firearm was 10 to 45 years'

5

imprisonment. Defendant could not recall but acknowledged he might have said "I'm aware. I understand." Defendant clarified that he was not saying he did not understand the plea at the time but said it under duress and he was not in the right frame of mind. He also stated that counsel was not trying to represent him or investigate the facts of his case. He stated that he never asked for counsel and did not want her to represent him.

¶ 19    The court then asked about defendant's previous remarks regarding the UCC and him being a beneficiary. Defendant indicated there was a contract between him, the State, and the court, but not defense counsel. He alleged that the State was claiming to be the beneficiary to the trust. Defendant contended the court was practicing law from the bench and trying to bind defendant to a contract under maritime law. Based on these comments, the court ordered defendant to speak with Dr. Cuneo so that it could determine whether defendant was unfit or was trying to avoid the law. Defendant stated he did not give his consent because he had already spoken with Dr. Cuneo. The court then allowed Dr. Cuneo to ask some questions. Defendant stated, "this is like the intimidation part in my motions." After defendant would not answer one of Dr. Cuneo's questions, defense counsel informed defendant that if he did not answer, Dr. Cuneo could not determine if he was fit and if defendant could not be determined fit then he could not represent himself and the court could not address his motions. Defendant then answered Dr. Cuneo's questions regarding his legal argument that the court lacked jurisdiction. During their discussion, defendant made comments indicating that he believed he was a sovereign citizen. He also discussed this case being commercial crimes relating to commerce and his belief that the UCC and civil law applied.

¶ 20    After Dr. Cuneo was done questioning defendant, the court announced it was going to wait for Dr. Cuneo to issue a report before deciding how to proceed. It did not feel it was fair to proceed with any substantive matters until it understood whether defendant was legally able to proceed on

6

those matters. Defendant stated the court was putting him in a bind because it was trying to say he was not fit and therefore taking away his jurisdiction. The court then granted Dr. Cuneo's second request to ask questions.

¶ 21 During the second discussion between defendant and Dr. Cuneo, defendant stated trials were for controversies and disputes and that he had none. He further indicated that the State had a dispute with a "straw man" or an illegal corporation status and not the beneficiary, which was him. At one point, defendant indicated that he did not know what the State was offering in this case. Dr. Cuneo stated that he pled to 20 to 40 years' imprisonment. Defendant replied that the plea was under duress, threat, and coercion and that counsel coerced him into it.

¶ 22 The court asked if there was anything else. After a back and forth between the court and defendant, he asked if the court understood it had to be in harmony with the common law and to be in harmony with the common law, there must be a damaged party. The court stated it understood its duties and responsibilities as a court. The same day, the court filed an order stating that it raised a *bona fide* doubt of defendant's fitness.

¶ 23 On August 4, 2020, defendant filed, *pro se*, a motion to dismiss with prejudice. The motion stated that all laws were contractual commercial law, which made all crimes contractual, and the remedy was found in the UCC. Defendant contended he was unfranchised and thus not compelled to perform under a UCC contract. The motion also stated that this case was racially cruel and motivated by malice.

¶ 24 On November 2, 2020, defendant filed, *pro se*, a document titled "False Imprisonment Criminal Affidavit." The document again alleged that defendant never gave jurisdiction to the court. It further stated that defendant did not waive his natural rights, and this case was a clear kidnapping.

7

¶ 25 On November 16, 2020, defendant filed, *pro se*, a document titled "Affidavit to Strike Judgment Due to Malicious Prosecution." In this document, defendant contended that he did not give the public defender or the court "power of attorney," and as such the court had no authority to do anything other than dismiss the case. He again argued that he did not give the court jurisdiction. The same day, he also filed a document titled "Affidavit to Dismiss Writ of Mandamus." In this document, he argued—*inter alia*—that he never gave consent to enter a plea and did not commit a crime on the night in question.

¶ 26 On December 21, 2020, the court noted it received Dr. Cuneo's report. In the report, Dr. Cuneo found defendant fit to stand trial and be sentenced. At the fitness hearing, on March 30, 2021, Dr. Cuneo opined, based upon a reasonable degree of psychological certainty, that defendant was fit to be sentenced and fit to stand trial. Dr. Cuneo averred that defendant could cooperate if he wanted to cooperate and understood the concept that he could be sentenced. He testified that defendant's willingness to barter for a better sentence indicated that defendant had the ability to understand. Dr. Cuneo further stated that defendant's indication that he was a sovereign citizen had no bearing on his psychological opinion.

¶ 27 After Dr. Cuneo was excused, defendant stated that he did not want counsel to represent him, and he was speaking for the "straw man." After defense counsel and the State argued that it was clear defendant was fit to stand trial and be sentenced, the court held, based on the evidence before it, that defendant was fit to be sentenced. It further stated, "we will proceed with the very next step procedurally."

¶ 28 Counsel requested that she be allowed to withdraw, and defendant granted leave to represent himself. The court agreed and stated it would remove counsel from the case if that was what defendant still wanted. Defendant stated that he did not want counsel. The court removed

8

counsel, ordered the presentence investigation report be updated, and set the case for a status hearing to ensure the parties were ready for sentencing. The same day, the court filed an order finding defendant fit to be sentenced. The order also noted that the public defender was removed from the case.

¶ 29 At the May 17, 2021, hearing, the court ensured defendant wanted to remain *pro se*. Defendant replied that he was his own power of attorney. The court ordered the presentence investigation report be updated again. Defendant announced that he wanted to know what was going on. The court asked if defendant remembered entering a plea of guilty. Defendant stated that he had an affidavit regarding dismissing counsel from his case, referencing him being coerced, intimidated, and that he felt under duress.

¶ 30 The court stated it first needed to address the motion to withdraw the plea. It clarified that it still ordered an updated presentence investigation report, but it would set the case to discuss whether the plea was voluntary or under duress.

¶ 31 The same day, the court entered an order, noting that it previously held defendant was fit. It stated that defendant contested the voluntariness of his plea on February 18, 2020, and set that matter for hearing on July 1, 2021.

¶ 32 At the July 1, 2021, hearing, the court stated that it previously discussed defendant's motion to withdraw his plea, and in that motion raised claims of ineffective assistance of counsel. The court stated it needed to examine those claims and asked defendant to tell the court why he believed counsel was ineffective.

¶ 33 Defendant first complained that counsel was not working on his behalf. He stated counsel was aggressive and used several cuss words when she addressed him. He felt counsel used his fourteenth amendment against him and required him "to testify against [himself], against my will."

9

He stated counsel used threatening remarks, by saying that they did not have a chance. Defendant stated that counsel never had good legal advice or persistence. She did not say, "We can do this," "I suggest this," or "This is how we can get them on this angle in your case." Defendant clarified those actions or inactions were "where the threat and duress and intimidation comes in at."

¶ 34 Defendant also said that counsel explained his plea deal to him such that the sentence would not go over 10 years, and the attempted murder charge would be dropped, but in the end, it turned into an open plea. He did not agree to an open plea; he thought there would be a sentencing cap.

¶ 35 The court restated defendant's allegations. In doing so, it stated "so you believe that the attempted murder would be dropped, which is actually the case. It looks like all the counts were being dismissed, except for aggravated discharge of a firearm." It further stated the range for that charge was 10 to 45 years' imprisonment but the agreement limited the sentencing range from 20 to 40 years' imprisonment. Defendant agreed that was what was said but that counsel told him the court would be lenient, and counsel did not believe the court would sentence him to over 10 years' imprisonment. The court took the matter under advisement.

¶ 36 On July 14, 2021, the court entered an order, finding there was a basis for defendant's ineffectiveness claims that he felt pressured and intimidated to enter a plea, counsel failed to discuss legal strategy to defend the case, and counsel failed to explain the terms of the plea. After a full *Krankel* hearing on September 2, 2021, the court found counsel's performance did not fall below an objective standard of reasonableness. On September 3, 2021, the court entered an order, finding that after considering the witnesses, testimony, evidence, and arguments, defendant's ineffectiveness claims failed. As such, the court found counsel was not ineffective.

10

¶ 37     The sentencing hearing was held on October 20, 2021. After the parties presented evidence and provided argument, the court sentenced defendant to 40 years' imprisonment. The court then admonished defendant regarding his appellate rights by stating,

> "[Y]ou have a right to file a notice of appeal if you believe an appellate court should review what we've done in your case. However, before you file a notice of appeal, you must file a motion asking the Court to set aside the judgment and allow you to withdraw your plea. That motion must be filed in writing within 30 days, setting forth every reason that you have that you're asking me to make that decision. Anything you don't bring up in that motion, you won't be able to bring up at the appellate level should it get to that point.
>
> If I grant the motion, the judgment will be set aside, the plea will be withdrawn, and we'll bring the case back on the docket as if you never entered your plea, including Counts 1, 2, 3, 4 and 6.
>
> If I deny the motion, you have 30 days from that date to file your notice of appeal.
>
> And if a Court determines you can't afford the required transcripts or representation, they'll be provided for you."

¶ 38     On October 20, 2021, the court entered judgment and sentenced defendant to 40 months' imprisonment to be served at 85%. An amended judgment was entered on November 10, 2021, reflecting that defendant was sentenced to 40 years' imprisonment. Defendant did not file a motion to withdraw his plea. We allowed defendant's late notice of appeal on April 20, 2022.

11

¶ 39                                    II. ANALYSIS

¶ 40    Defendant asserts two issues on appeal. First, he contends the court was required to admonish him that he needed to renew or refile his premature motion to withdraw his guilty plea. Second, he asserts that the court abused its discretion in finding him fit on August 1, 2019, by failing to exercise its discretion in making that decision and instead relying solely on the parties' stipulation to Dr. Cuneo's fitness report. The State argues this court lacks jurisdiction where defendant failed to file a motion to withdraw his guilty plea after the sentence was imposed, or alternatively, defendant forfeited his allegation that the court erred in finding defendant fit and such is not plain error.

¶ 41    In cases involving negotiated pleas, Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) requires defendant to file a motion to withdraw his guilty plea "within 30 days of the date on which sentence is imposed." Compliance with Rule 604(d) is a condition precedent to appeal a guilty plea. *People v. Moore*, 2015 IL App (5th) 130125, ¶ 28 (citing *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 39-40 (2011)). While compliance with Rule 604(d) is not jurisdictional, we must dismiss an appeal of a guilty plea when the defendant fails to file the necessary motion to withdraw the guilty plea. *People v. Foster*, 171 Ill. 2d 469, 471 (1996). A court may consider a premature Rule 604(d) motion, but "the defendant must preserve his right to appeal by filing a motion to withdraw his guilty plea within 30 days following the imposition of the sentence and by then filing a timely notice of appeal from the disposition of that motion." *People v. Potts*, 136 Ill. App. 3d 1059, 1064 (1985); accord *People v. Marquez*, 2012 IL App (2d) 110475, ¶ 4.

¶ 42    However, the Illinois Supreme Court has created an "admonition exception" to the rule of dismissal for noncompliance with Rule 604(d). *People v. Hood*, 387 Ill. App. 3d 380, 384 (2008) (citing *Foster*, 171 Ill. 2d 469 (1996)). Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001) requires

the court to admonish defendant—*inter alia*—of the proper procedures under Rule 604(d) to appeal a guilty plea. Because the failure to comply with the requirements of Rule 604(d) results "in the loss of the right to direct appeal, [the Illinois Supreme Court] adopted Rule 605(b) as a necessary corollary to Rule 604(d)." *Foster*, 171 Ill. 2d at 472. Therefore, under the admonition exception, if the trial court fails to properly admonish defendant pursuant to Rule 605, the appellate court must remand the case for strict compliance. *Hood*, 387 Ill. App. 3d at 384.

¶ 43    It is undisputed that the court here advised defendant pursuant to Rule 605. Defendant contends that although the court substantially followed the language of Rule 605, it misled defendant as to Rule 604(d)'s requirements where it addressed defendant's motion to withdraw prior to sentencing and failed to explain to defendant that his prematurely filed motion to withdraw was insufficient to comply with Rule 604(d) and needed to be refiled after sentencing. The State argues Rule 605 does not require the court admonish that defendant must refile a motion to withdraw where it made the proper Rule 605 admonishments by informing defendant that he must file a motion to withdraw within 30 days. We agree with the State.

¶ 44    Defendant contends *People v. Ramage*, 229 Ill. App. 3d 1027 (1992), is instructive. In *Ramage*, defendant filed a motion to withdraw his plea just prior to the sentencing hearing. *Id.* at 1028. After announcing the sentence, the court did not advise defendant that he needed to file a new motion to withdraw to preserve his right to appeal. *Id.* Instead, the court stated, " 'In order to appeal, you must within 30 days file with the Court a written motion asking—no, you don't. You've already done that.' " *Id.* at 1029. On appeal, the appellate court clarified that "[a] premature motion filed prior to sentencing does not satisfy Rule 604(d) for purposes of an appeal." *Id.* at 1031. It held, "Under the circumstances presented in the case at bar, defendant should not be

penalized for failing to renew his Rule 604(d) motion where he may have been misled or prevented from filing his post-sentence motion." *Id.*

¶ 45   *Ramage* is easily distinguishable. The trial court in *Ramage* did not advise the defendant pursuant to Rule 605 and incorrectly stated that the defendant did not need to file a motion to withdraw because he had already done so prior to sentencing. Whereas, here, the court properly admonished defendant pursuant to Rule 605, including that before he could appeal, he needed to file a motion requesting withdrawal of the plea within 30 days and that anything not raised in the motion could not be asserted on appeal.

¶ 46   We find *People v. Collins*, 328 Ill. App. 3d 366 (2002), more analogous to the case at bar. In *Collins*, before the court imposed a sentence, the defendant indicated his wish to withdraw his guilty plea, claiming counsel was ineffective. *Id.* at 368. The court appointed conflict counsel, who filed a motion to withdraw the guilty plea and a Rule 604(d) certificate. *Id.* Ultimately, the court denied the motion. *Id.* Thereafter, the court sentenced the defendant and admonished him pursuant to Rule 605. *Id.* at 368-69. The defendant did not file another motion to withdraw his guilty plea before filing a notice of appeal. *Id.* at 369. On appeal, the defendant requested a remand to comply with Rule 604(d), arguing—*inter alia*—that "the trial court either erroneously believed that the presentencing motion was sufficient to satisfy Rule 604(d), or it simply forgot about the need for a postsentencing motion." *Id.* at 371. The appellate court found, unlike *Ramage*,

> "[the] defendant *** was properly admonished pursuant to Rule 605(b) after he
> was sentenced. It is clear that, in providing such admonishments, the trial court was
> aware of the need to file a Rule 604(d) motion and that it did not believe that the
> presentencing motion was sufficient to satisfy the requirements of Rule 604(d)." *Id.*
> at 371-72.

14

¶ 47    We agree with *Collins*'s statements that the defendant was properly admonished pursuant to Rule 605 under similar circumstances. Interpretation of supreme court rules is the same as that provided for statutory interpretation. *People v. Cline*, 2023 IL App (5th) 230849, ¶ 19; *McCarthy v. Taylor*, 2019 IL 123622, ¶ 17. When interpreting either a supreme court rule or a statute, the most reliable indicator of intent is the language "given its pain and ordinary meaning." *People v. Reese*, 2017 IL 120011, ¶ 30. When interpreting a rule, this court may not "depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict" with the language as written. (Internal quotation marks omitted.) *People v. Lighthart*, 2023 IL 128398, ¶ 39. Despite defendant's arguments, the rule does not contain a condition requiring the court, in situations where a motion to withdraw the plea is filed prematurely, to admonish a defendant that a new motion is required. Rather, the rule required the court to inform defendant—*inter alia*—that he needed to file a motion to withdraw within 30 days of the date on which the sentence was imposed. The court did so here by specifically instructing defendant that before he could appeal, he must file a written motion with the court asking to withdraw his plea within 30 days. Based on this admonishment, defendant was advised that he needed to file a motion within 30 days in order to appeal, which necessarily implies that the filing of prior motions would not suffice.

¶ 48    Because the court properly admonished defendant pursuant to Rule 605, we find the admonition exception does not apply here. We therefore must dismiss the appeal due to defendant's failure to comply with Rule 604(d). *Foster*, 171 Ill. 2d at 471.

¶ 49                                III. CONCLUSION

¶ 50    Where defendant failed to file a motion to withdraw his guilty plea pursuant to Rule 604(d), we dismiss this appeal.

¶ 51    Appeal dismissed.

15